Mears's Estate.

Argued January 7, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

218

*Scott Seddon,* for appellant.—The language of testator's will created a gift on condition or for a particular purpose with respect to the residuary estate, and not a trust for a general charitable use: Frazier v. St. Luke's Church, 147 Pa. 256; University of London v. Fowler, 2 Ch. (1909) 1; Domestic & Foreign Missionary Society's App., 30 Pa. 425.

It was testator's intention to create a gift on condition or for a special purpose, rather than a general charitable use, with respect to the residuary estate: English's Est., 242 Pa. 545.

It was testator's intention to limit the use and enjoyment of the respective bequests, including the residuary estate, to the specific institutions in question.

Appellee, to whom the fund was awarded in the court below, is not qualified to properly administer the fund in strict compliance with the directions of testator.

*R. Sturgis Ingersoll,* of *Ballard, Spahr, Andrews & Ingersoll,* for appellee.—The will did not create a gift conditioned on Harvard accepting the trusteeship.

In the will under consideration there is no specified condition, nor is there any gift over; there is a direct naming of a purpose and of a trustee to carry out that

purpose, and that is all: Thompson's Est., 282 Pa. 30; Domestic & Foreign Missionary Society's App., 30 Pa. 425; Seagrave's App., 125 Pa. 362.

The Jefferson Medical College of Philadelphia is preëminently qualified to administer the trust.

OPINION BY MR. JUSTICE FRAZER, February 5, 1930:

The chief ground of appellant's opposition to the decree of the court below is embodied in the second proposition set forth in their statement of questions involved, namely, that testator's intention was to create a charitable gift on condition or for a special purpose, rather than a general charitable use, and that consequently the President and Fellows of Harvard College, hereinafter referred to as Harvard University, having refused to accept the bequest by reason of its unwillingness to comply with the conditions imposed by the will, the legacy falls and should revert to next of kin. The legacy reads as follows: "All the rest, residue and remainder of my estate, real and personal, I give, devise and bequeath unto the President and Fellows of Harvard College, to be received by them and to be used by them in founding in Harvard University in such manner as may, in their judgment, be best, 'Courses of Instruction in Eugenics.' It is my wish that the subject be taught in all of its branches, notably that branch relating to the treatment of the defective and criminal classes by surgical procedures, as I have advocated in my writings on the subject, especially as set forth in my book on the 'Problem of Race Betterment.' " The court below, in sustaining the decree of the auditing judge in favor of appellee, finds "it is the simple case of a bequest to a certain corporation in trust for a charitable use which, for reasons satisfactory to the trustee, has been declined." It is more than that. Testator is definite as to the means by which his charitable purposes may be carried out, and equally plain as to the objects of the charity. The realization of his charitable design is not however made

dependent upon any condition or event. That he designated particularly Harvard University as the instrument by which the purpose of his bequest might be materialized is evident; and that he expected it would become such instrument is plain. But neither the trustee named, nor the plan decedent mentioned to effectuate his intention, constitute the substance of his gift, and, particularly in cases of this character, the law regards the kernel rather than the shell. Previous to a plan for putting his charitable design into effect, was his intention and conclusion to create the charitable use, and devote it to a definite purpose; not, however, to a localized institution, or to a specific individual or group of persons, but to a very general, even world-wide, activity, which he designated in his will as the "Problem of Race Betterment,......one which concerns most importantly the welfare of the human race." As a special means for advancement of this cause and realization of his charitable purpose, he desired Harvard University to found "Courses in Eugenics," "in such manner as may, in their judgment, be best." The trust was declined by the University Corporation, since it decided that it "would be unable to apply it in accordance with the desires of the testator."

Appellant's contention is that this declination effects a nullification of the wishes of testator and ends the trust. But, as we have already said, no contingencies or alternatives are interposed by the terms of the legacy, the application of which was not intended for benefit or use of the university; nor was it designated primarily for establishment of a course of lectures by that institution; but, for promotion of a great humanitarian cause, embracing, in the words of the will, "treatment of the defective and criminal classes," the "welfare of the human race," aspects of what he sums up as the "Problem of Race Betterment," upon which subject he had written and published a book.

The policy and purpose of the long line of decisions by this court on the subject of charitable trusts offers no warrant for the claim that the declination of Harvard University of the legacy strikes it down, for the reason that "the entire frustration of the donor's purpose to found a public charity [is] a result never permitted when the general intent of the benefactor can be approximately carried out": Toner's Est., 260 Pa. 49, 58; Kramph's Est., 228 Pa. 455. As the learned court below states, the cases cited by appellant are not applicable here, as the conditional aspects of the bequests there considered are apparent and as in the English case mentioned, Cherry v. Mott, 1 Myline and Craig 123, no general purpose of charity was in any of them there mentioned and no specific appropriation made, nor was the fund sufficient to inaugurate the purpose of decedent.

The real and practical questions in these cases, as set forth in Dulles's Est., 218 Pa. 162, 168, are, "first, is the testator's general intent ascertainable; and, second, is there any tribunal provided to ascertain the specific objects to which such intent is to be applied? If so, the trust is not void for uncertainty, whether it is for a technical charity or not." The primary object of the trust in the case at hand was not, of course, Harvard College, nor the establishment of a course of lectures on "Eugenics," but to help along the solution of the vast "Problems of Race Betterment"; and since the refusal of Harvard University to accept the gift did not destroy or nullify it, and public policy always demands the proper application of a charitable bequest devoted to the general welfare, both public policy and the law require that if one trust agency fails, the courts will provide another. The Act of May 3, 1855, P. L. 415, provides for this contingency, by empowering the courts "to supply a trustee, and by its decrees to carry into effect the intent of the donor or testator, so far as the same can be ascertained." This remedy, was by no means a new

one in 1855. Before that period it was held in Mann v. Mullin, 84 Pa. 297, to be a clear and established rule that a charitable trust should not fail for lack of a trustee. Charities have always been favorites of the law in Pennsylvania and the Act of 1855 provides remedies which seem to make it impossible that a charity should fail through defects in the scheme of management: Daly's Est., 208 Pa. 58, 66.

In the present case no difficulty exists as to the ascertainment of the purpose of testator. No obligation compelled the designated trustee to accept the gift and carry out the plan designed. No directions in the will provided that the trust should take effect or be managed upon the happening of any contingency. It was not a gift for that university's benefit, but for the human race, being thus a charity of wide public purpose. To nullify such charity, under the circumstances of this case, would require us to ignore the entire trend of our decisions on the subject. The principles sustaining our disposition of the present case were stated clearly in City of Phila. v. Girard's Heirs, 45 Pa. 9, 27, as follows: "The rule of equity on this subject seems to be clear, that, when a definite charity is created, the failure of the particular mode in which it is to be effectuated does not destroy the charity, for equity will substitute another mode, so that the substantial intent shall not depend on the insufficiency of the formal intention"; and, as appellant lays great stress on English decisions on the subject, it will not be amiss to note that in Moggridge v. Thackwell, 7 Ves. b 36, 69, Lord ELDON, then Lord Chancellor said: "All of which [cases] appear to prove, that if the testator has manifested a general intent to give a charity, the failure of the particular mode in which the charity is to be effecutated shall not destroy the charity; but, if the substantial intention is charity, the law will substitute another mode of devoting the property to charitable purposes, though the formal intention as to the mode cannot be accom-

plished." An effective illustration of these principles is found in the case of the Domestic and Foreign Missionary Society's App., 30 Pa. 425, where testator left a charitable legacy to the "Missions and Schools of the Episcopal Church about to be established at or near Port Cresson." There were no such missions or schools at Port Cresson, and this court awarded the legacy to the "Domestic and Foreign Missionary Society of the Protestant Episcopal Church of the United States of America." Thus, in the question here under consideration, the particular mode or trust, as designated by testator, has failed, and equity allows and the law directs that there shall be judicial appointment of another trustee to prevent nonfulfillment of the intention of testator and failure of the trust: Stevens's Est., 200 Pa. 318; DeSilver's Est., 211 Pa. 459; Hunter's Est., 279 Pa. 349.

Appellant's counsel in their brief cite and rely on numerous decisions of English courts to sustain their position. An examination of those cases will show they are not applicable to the present controversy, inasmuch as they presented either conditional barriers or other circumstances that differ from this case. But, as we have shown above, the principles that have long governed and preserved charitable trusts in England have been, so far as we have deemed suitable, adopted in this jurisdiction, and the solicitous care of these benefactions has always been a duty of the courts here as well as there. In fact we find the English Court of Chancery disposing of a case almost identical with the present one, reaching the same conclusion as we do here,—the provision of a new trustee where the designated one has failed. This was the case of Reeve v. Attorney General, 3 Hare 191, where a decedent made two charitable bequests in trust of one thousand pounds each; one to "The Society for the Bettering of the Condition of the Poor," and the other, the "Society for the Encouragement of Female Servants." Both these corporate bodies refused to accept the gift, and the court held that al-

though the designated instrumentalities for carrying out the wishes of testator were not available, donor's intention should not thereby fail, and directed that the matter be referred back to the master "to settle a scheme for the administration of the said legacies" in a way that would meet the intention of testator, which would result in the selection of new trustees and a scheme or plan quite different from that designated by decedent in the will. In his opinion directing such disposal of the case, Vice Chancellor SHADWELL said, page 197: "In this case the objects of the trust are pointed out by the will with great minuteness. I have no ground, either in the language of the will or the circumstances of the case, for supposing that the discretion of the particular societies named in the will was of the essence of the gifts, so that the disclaimer of those societies is to destroy the gifts altogether. I think that is not the case. And therefore, following the view which Lord ELDON took of the question, ......I think it must be referred to the master to settle a scheme for the distribution of these legacies, having regard to the terms of the charitable bequest." In the Reeve Case, as will be seen, the court went so far as to create an entirely new instrumentality for the realization of the intention of testator.

We do not deem necessary any comment from us as to the qualifications of Jefferson Medical College to effectuate testator's purpose. The testimony of the dean and others of the faculty before the chancellor showed it to be amply equipped to investigate, and, if necessary, teach the subject of "Eugenics" to such students as may desire instruction upon that branch; and its standing as a medical institution insures its faithful regard for the purposes of the trust given it. The charitable bequest was however fully protected by the decree of the auditing judge which required the trustee to enter its own bond in the sum of $75,000, conditioned to properly perform its duties as such trustee, and make and file in the Orphans' Court of Philadelphia County, at

the expiration of five years an account and report showing what action it has taken and the proceedings had in carrying out the trust.

We have, in our general consideration of the case, covered the substance of the various assignments of error presented by plaintiff; all are overruled, and the decree of the court below is affirmed at appellant's costs.