## Wilkey's Estate

566

*Frank F. Truscott* and *William N. Trinkle*, for Palethorp Presbyterian Church, exceptants.

*Keller H. Gilbert* and *Charles D. Fagles*, for John H. Wilkey et al., exceptants.

*Richard K. Stevens*, for Trustees of the Presbytery of Philadelphia.

LADNER, J., December 17, 1937.—By his adjudication the learned auditing judge refused to find that the purpose of the plan of the trust has so wholly failed as to warrant a finding that the testatrix had died intestate as to the residue of her estate. Under the familiar cy pres doctrine, he awarded the residue to the Presbytery of Philadelphia under the testamentary trust. To his action in this regard exceptions were filed by the heirs on the one hand, who claimed under the intestate laws, and by the Palethorp Presbyterian Church on the other, who sought to have the auditing judge rule that in view of the impracticability of carrying out the testatrix's wishes to erect a church on a designated plot of ground, the Palethorp Presbyterian Church came nearest to her main intent.

Considering first the exceptions filed by the next of kin, the learned counsel for the next of kin seeks to have us construe the trust in question as a gift upon condition. Several cases are cited for the proposition that when an essential condition precedent to a gift is impossible of performance, the gift fails. The difficulty with this contention, however, is that here we have a gift for a charitable use which must be construed in accordance with our cy pres act. Cases not involving construction of trusts for charitable use have therefore no application. In Hamilton et al. v. The John C. Mercer Home, 19 Dist. R. 169, affirmed on appeal, 228 Pa. 410, Judge Sulzberger, in a learned discussion of our three cy pres acts, April 26, 1855, P. L. 328, sec. 10, July 7, 1885, P. L. 259, and May

23, 1895, P. L. 114, pointed out that the last-mentioned act repealed the previous act under which it was provided that when the court's power to apply the cy pres doctrine has been exhausted, the funds go to the heirs at law and next of kin. The repealing Act of 1895, supra, provides in plain terms:

". . . but if the objects of the trust be not ascertainable, or have ceased to exist, or such disposition be in excess of the annual value permitted by law, or in perpetuity, such disposition, so far as exceeding the power of the courts to determine the same by the rules of law or equity, shall be taken to have been made subject to be further regulated and disposed of by the Legislature of this Commonwealth, in manner as nearly in conformity with the intent of the donor or testator and the rules of law against perpetuities as practicable, or otherwise to accrue to the public treasury for the public use".

In commenting upon this Judge Sulzberger said, p. 173:

"The decedent parted with the whole of her estate in the fund, reserving nothing, granting no remainder or other subsequent estate. Whatever claim the plaintiffs have must be derived, not from the testatrix, but from the commonwealth. Lapsed charities had originally, at the common law and, since 1855, by statute been viewed as the property of the commonwealth."

What was said in that case is equally applicable here, and we do not see that the heirs at law and the next of kin of the testatrix have any standing before this court to claim the residue of the devise, for by the Act of 1895 even if the trusts were wholly to fail, the funds would go to the Commonwealth, from whom the right to will property or inherit under the intestate laws is derived.

But apart from this reason, even assuming that the heirs at law or next of kin have a standing to be heard upon this question, the broad power of our cy pres statutes and the liberal interpretation of the same by our Supreme Court in the many cases cited by the auditing judge, preclude us from striking down the charitable gift. We

are therefore of the opinion that the auditing judge has correctly applied the governing principle of the law to the facts before him. This principle is that when a definite function or duty is to be performed and it cannot be done in exact conformity with the scheme of the person or persons who have provided for it, it must be performed with as close approximation to that scheme as is reasonably practicable, and in that manner must, of course, be enforced. It would serve no useful purpose to repeat the reasoning of the auditing judge, nor again review the pertinent authorities upon which he bases his conclusions. Suffice it to say that we approve of his findings in this regard and dismiss these exceptions of the heirs at law and the next of kin.

The exceptions filed on behalf of the Palethorp Presbyterian Church raise an entirely different question. Counsel for this exceptant approves of the ruling of the auditing judge in holding that the case is a proper one for the application of the cy pres doctrine but excepts to the ruling of the auditing judge that the choice of location of the memorial church building was for determination, in the first instance, by the trustees of the gift, instead of for determination by the court. We think that there is merit in this contention if we construe the action of the auditing judge to be the surrender of the responsibility placed upon the court to approve variations in the plan of the testatrix by reason of the impossibility of compliance therewith. We do not understand, however, that the auditing judge intended any such thing.

From the record, particularly the testimony of Dr. Fulton, the secretary of the Trustees of the Presbytery of the Presbyterian Church of Philadelphia, from the brief filed by their counsel at argument and from the testimony of Mr. Norton, a member of the Ontario Presbyterian Church, hereinafter referred to, we gather that the trustees have already come to a conclusion in the matter. It is stated that they proposed to use the Wilkey funds to erect a church building on a plot of ground 100 by 150

feet at Ontario and H Streets for the Ontario Presbyterian Church congregation, which has a Sunday School building, but no church building. It further appears that the proposed site is about seven squares from the site designated by the testatrix in her will; that there are about 157 families connected with the Ontario Presbyterian Church, contributing 277 individual members to the total enrollment of the church, between the Wilkey property and the church; that the Ontario Church is of the same branch of the Presbytery as the church of which the decedent was a member (Bethesda Presbyterian Church), that an appropriate church building could be built on the site above mentioned at a cost of from 30,-000 to 35,000 dollars, which is approximately the sum which will be realized from the Wilkey estate. It also appears that the Ontario Church is willing to change its name to correspond with that required by the will, namely, Wilkey Memorial Presbyterian Church. Because of these reasons the trustees believe that such use would most closely approximate the wishes of the decedent.

There is no reason why we should not regard this testimony and statement of intended use by the trustees as a plan submitted to the auditing judge for his approval, such procedure being a proper one and in accordance with Mears' Estate, 299 Pa. 217, and Curran's Estate, 310 Pa. 434, and we will so treat it.

Thus considered, it would seem that the real objection of the Palethorp Presbyterian Church is not so much to the failure of the auditing judge to specifically approve the proposed plan of the trustees as it is to the fact that the auditing judge did not direct the trustees to use or award the fund to be used for the benefit of the Palethorp Presbyterian Church. It was urged at the audit and before us that such use would more closely approximate the wishes of the decedent for the following reasons: Because the Palethorp Presbyterian Church is located about three blocks from the site designated by the decedent. Because the site on which the Palethorp Church is located was at

one time owned by the Wilkey family. Though the Palethorp Church is equipped with a church building, it needs a chapel to house the Sabbath School and other church activities which it would be willing to call "The Wilkey Memorial". The testatrix, however, desired a memorial to the Wilkey family in the form of a new church to be erected and not in the form of a mere appurtenant building to an existing church under a different name. No offer was made to change the name of the Palethorp Church to "Wilkey Memorial Presbyterian Church", probably because the Palethorp Church was so named in order to qualify for a legacy of $75,000 left by a testator whose name was Palethorp, to be given to build a church to be called by that title. Whatever the reason, no such offer was made, nor in view of the history of the legacy mentioned ought this court encourage such change of name.

We are of the opinion that a primary wish of the testatrix was to establish a memorial to the Wilkey family in the form of a Presbyterian church by that name. In view of the fact that such memorial cannot be erected, either at the place or in the manner desired by the testatrix, the nearest approximation to her wishes must serve. This in our judgment will be best accomplished by approving the use of the funds in the manner proposed by the trustees. We approve, therefore, their plan. Following the precedent in Mears' Estate and Curran's Estate, supra, holding that the proper time to approve the proposed plan of the trustees is at the audit of the account, we, with the consent of the auditing judge, modify his adjudication so that the last clause of the third paragraph from the end will read:

"And the rest to the Trustees of the Presbytery of Philadelphia of the Presbyterian Church in the United States to be used, together with any other funds available, for the purpose of erecting on a plot of ground belonging to the Ontario Presbyterian Church at H and Ontario Streets, Philadelphia, a church building to be known as "Wilkey Memorial Presbyterian Church" upon the con-

dition that the Ontario Presbyterian Church, by appropriate proceedings and proper corporate action, will change its name to "Wilkey Memorial Presbyterian Church".

As thus modified, the adjudication is confirmed absolutely and exceptions are dismissed.