Bangor Park Association Case.

Argued April 14, 1952. Before DREW, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Edmund P. Turtzo,* for appellants.

*Alfred M. Nittle, Sullivan Cistone* and *James F. Pritchard,* with them, *J. Lawrence Davis,* for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, May 26, 1952:

This appeal is by disappointed prospective purchasers of real estate, whose contract, unfortunately for them, was made with persons possessing no title. The facts are recited at length in our opinion in *Abel et al. v. Girard Trust Company et al.,* 365 Pa. 34, 73 A. 2d 682. The action was in equity in the nature of *quia timet.* Trustees of a closed bank secured a title to real estate by *sheriff's deed* following an attachment execution upon a judgment obtained in a suit against a corporation upon two of its promissory notes. After securing such title the trustees agreed to sell the real estate in fee simple to the present appellants. The title examination disclosed a question whether the trustees could convey a valid title in fee simple, the solution of which depended upon the effect of the words constituting the *habendum* clause in the deed to the judgment debtor. The trustees filed their complaint, in *quia timet,* as above stated. All interested parties were joined. The trustees alleged that the Bangor Park Association, the judgment debtor, had acquired title *in fee,* with power to convey free of trust restrictions, and hence under the sheriff's deed title passed to the trustees in fee simple, which they were able to transfer to the present appellants. The grantors of such judgment debtor, the Brown Estate, on the contrary, contended that their conveyance created a *base fee* and because of non-user in accordance with the terms of the grant, a reversion to the grantors resulted. This Court decided that the fee was not base but was absolute and there was no reverter. We also held (which

was a necessary consideration in a *quia timet* proceeding) that such transfer was made to the Bangor Park Association under a valid *charitable trust*. Since this decision we have re-affirmed both principles. See *Hoffman v. Pittsburgh et al.*, 365 Pa. 386, 75 A. 2d 649, as to reverter and *Loechel v. Columbia Borough School District*, 369 Pa. 132, 85 A. 2d 81, as to creation of charitable trusts. We decided that it was immaterial that the trustee was no longer functioning or that the land had ceased to be used for the charitable purpose named in the deed, viz.: "For the exclusive use by the grantee hereof, its successors and assigns, of said premises, as and for a public park, for the use and benefit of the inhabitants of the Borough of Bangor aforesaid, and to and for no other use or purpose whatsoever."

We said, p. 40 et seq.: "The familiar rule is that a charitable trust will not fall for want of a trustee: Thompson's Estate, 282 Pa. 30, 35, 127 A. 446; Jordan's Estate, 329 Pa. 427, 197 A. 150; Restatement of Trusts, section 353(3); 3 Scott on Trusts, sections 397, 397.3, page 2066 et seq.

"While no claim has been presented on behalf of the inhabitants of the Borough of Bangor, the attention of the proper officials of that borough, and of the Attorney General, must be drawn to their duty to enforce a public charitable trust: Williams Estate, 353 Pa. 638, 46 A. 2d 237; Restatement, Trusts, section 391; Estates Act of 1947, April 24, P. L. 100, section 10, 20 PS 301.10. It is presently unnecessary to consider whether the original purpose of the trust can be carried out, in which case a new trustee would be appointed, or whether resort must be had to the application of the doctrine of *cy pres*, in which event the property would be sold and the proceeds awarded: Mears's Estate, 299 Pa. 217, 149 A. 157; Hoff's Estate, 315 Pa. 286, 172 A. 645."

446

The present record discloses the disregard of our decision. As the trustees of the closed bank possess no title to the real estate, they are not parties in interest. They do not have the status to petition for the appointment of a substituted trustee, and for the sale of the premises. Obviously, therefore, the court could not approve the proposed sale upon petition of parties without interest, even though real estate experts may have testified at the hearing that the $5,000 consideration agreed upon was a full and fair price. But in addition an answer was filed by one Capozzolo offering $6,000, a thousand dollars more than has been offered by appellants. Another answer was filed by the Burgess of Bangor Borough, objecting to the sale at $5,000 and requesting the court to appoint a substituted trustee, which has not yet been done. Three individuals, Horn, Wagner and Remagon answered that the petitioners had resigned as trustees for the closed bank, and that they had been appointed in their place, and "acquiesce in said proceedings and join in the prayer of said Petition." Lastly, appellants answered, in a formal answer filed by Mr. Turtzo, their counsel, with language which we regard as an impertinent and scandalous affront to this Court.

What the trustees for the bank and counsel for the appellants appear to have overlooked is that the attachment execution against the *Bangor Park Association* did not, and could not, bind real estate held by the debtor corporation, *as trustee for the charitable trust.* They fail to comprehend that because of the non-user of the real estate for the purpose indicated in the deed the sheriff's sale and deed did *not* terminate the trust and end the charitable use for which the property was dedicated. All that the sheriff's deed transferred to the creditors was the association's interest and title in the real estate (i.e. not that as trustee), which, as above indicated, was nothing. See: *Wells v. VanDyke*, 106

Pa. 111; *Fischer v. Woodruff,* 254 Pa. 140, 98 A. 878; *Taylor v. Bailey,* 323 Pa. 278, 185 A. 699; *DiCarlo v. Licini,* 156 Pa. Superior Ct. 363, 40 A. 2d 127.

It is not clear from this record whether the corporate charter of the Bangor Park Association has in fact been surrendered. If it has then a substituted trustee may be appointed. If the association is still in existence, but has ceased to function, it may be necessary first to *remove* it as a delinquent trustee. As the judgment and execution were apparently effective, it would seem necessary first to make such inquiry. After a trustee is shown to exist or a substitute appointed then a hearing must be had and testimony presented to determine whether or not the purposes of the trust may be carried out, and if not, then to direct a sale. As the real estate is impressed with a charitable trust, the substituted trustee will be required, after an appropriate order of sale by the court, to obtain the highest and best price under all the circumstances. As this constitutes a judicial sale, such sale will be subject to the approval of the court: *Baton Coal Company Appeal,* 365 Pa. 519, 524, 76 A. 2d 194, and cases therein cited. Upon realization of a fund from a sale the trustee must file an account and, under the doctrine of *cy pres,* the court will direct proper application of the same.

The learned court below made the following extraordinary unwarranted order, which we do not approve, and which must be vacated. It reads: "The Attorney General of Pennsylvania has assented and given leave to the institution of the instant proceedings. The petitioners and Borough of Bangor have requested the appointment of a new trustee in the place and stead of Bangor Park Association, with further reference to the public charitable trust involved herein. If the Borough of Bangor desires to continue the original purpose of the trust and will reimburse the petitioning trustee-owners or their successors to the extent to which the

trust estate was benefited and still obligated at the time of the Sheriff's sale, together with other benefits bestowed on the premises since the Sheriff's sale for which reimbursement should legally be made, and pay the appeal costs aforesaid; we will make a proper order appointing it the new trustee and directing a proper conveyance of the premises to it as such trustee under such circumstances."

There is not disclosed in this record any basis for the application of the equitable doctrine of restitution or unjust enrichment. The usual case of unjust enrichment involves a suit to "reach the trust estate by a proceeding against the trustee in his representative capacity and . . . recover the amount by which the estate was enriched, although the trustee exceeded his authority in incurring the liability." : 2 Scott on Trusts, sec. 269.1, p. 1516. Here there was no suit against the association in its representative capacity as trustee for the inhabitants of the Borough of Bangor, nor does it appear from the record that the purchase money was originally borrowed *in such capacity.* Even though the corporate association may have borrowed money from the bank upon its notes and used part or all of the borrowed money in the purchase of real estate which it then caused to be dedicated for charitable uses, this fact *alone* did not give the bank, or its trustees, an equitable lien on the real estate or require restitution because of unjust enrichment. In the absence of additional facts or equities no such interest can be declared. But in any event, any such claim would not affect the *title* as above indicated but would constitute an equitable lien or claim against the *fund,* which is not yet before the Court. No election by the borough is, therefore, necessary or required. As a charitable trust has been declared by this Court to *exist,* title is already in the present or substituted trustee and no *transfer* of title is requisite.

The order denying confirmation of appellants' contract of sale is affirmed. The remaining portion of the court's order is vacated. Costs to be paid by appellants.