## Wilkey's Estate.

Argued November 28, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Charles D. Fagles,* with him *Keller H. Gilbert,* for appellant.

*Richard K. Stevens,* of *Stradley, Ronon & Stevens,* for appellees.

OPINION BY MR. JUSTICE STERN, January 2, 1940:

Margaret L. Wilkey, an elderly, unmarried woman, died leaving a will in which she bequeathed to the Trustees of the First Presbyterian Church of Frankford in the City of Philadelphia, the sum of $200, to the Trustees of Bethesda Presbyterian Church at Frankford Avenue and Berks Streets, Philadelphia, the sum of $500, and to the Trustees of the Presbytery of Philadelphia of the Presbyterian Church in the United States of America all the rest, residue and remainder of her estate, "for the following purpose, to wit:—

"To raze the Stone Farm House building situate on my ground at the corner of B and Westmoreland Streets in the City of Philadelphia, which has been the home of my family for generations, and to erect on the site a suitable Church Building to be known as the Wilkey Memorial Presbyterian Church. The amount to be expended for the building to be decided upon by my Executors and Trustees, hereinafter named, and The Trustees of the Presbytery of Philadelphia of the Presbyterian Church in the United States of America.

"It is my desire that the entire plot of ground fronting on Westmoreland Street, B Street and Kip Street shall be used solely for the purposes of the Church;

the dwelling now occupied by me to be the Manse for the use of the Pastors.

"If at all feasible, it is my desire that the stones from the Farm House Building be incorporated into the Church Building; and it is my desire that the architectural design and the appearance of the building shall conform as nearly as possible with that of the First Presbyterian Church of Frankford at Frankford Avenue and Church Street, in the City of Philadelphia.

"In order to further the intent of this my will, I do hereby order and direct my Executors and Trustees, hereinafter named, to sell all of my real estate (except that at Westmoreland, B and Kip Streets) . . . and to hold the proceeds of such sale or sales on deposit in the Kensington National Bank in the City of Philadelphia, IN TRUST, however, to disburse the same as shall become necessary in the erection of the Church Building and other expenses contingent thereto.

"And any surplus moneys remaining, I desire shall be turned over to The Trustees of the Presbytery of Philadelphia of the Presbyterian Church in the United States of America to be set apart as an endowment fund to be known as The Wilkey Memorial Endowment Fund; this fund to be administered at the discretion of The Trustees of the Presbytery of Philadelphia of the Presbyterian Church in the United States of America, for the benefit of The Wilkey Memorial Presbyterian Church."

The plot upon which Miss Wilkey thus directed the erection of a Wilkey Memorial Presbyterian Church was 140 feet by 100 feet, the remnant of a large farm which had been in the possession of her ancestors since the days of William Penn. Unfortunately, she owned only a one-half interest therein, the other half interest being owned by her sister Annie M. Wilkey, who had predeceased her by many years. Whether this divided ownership would, of itself, have prevented the carrying out of Margaret L. Wilkey's testamentary plan does

not clearly appear, but this becomes unimportant in view of the more vital fact that shortly after her death the ground was taken by eminent domain for school purposes. The heirs of testatrix, consisting of nephews and nieces, thereupon laid claim to her residuary estate, but the Orphans' Court awarded it to the Trustees of the Presbytery of Philadelphia of the Presbyterian Church in the United States of America to be used, together with other funds that might become available, for the purpose of erecting on a lot of ground belonging to the Ontario Presbyterian Church at H and Ontario Streets, Philadelphia, a church building to be known as "Wilkey Memorial Presbyterian Church," the Ontario Presbyterian Church agreeing to change its name and adopt that designation. The Ontario Presbyterian Church, which is located about seven city squares from the site of testatrix's homestead, has a Sunday School building on its lot but not a church building; a church structure that would be adequate, although not as large as that of the First Presbyterian Church of Frankford, can be erected there at a cost not greatly in excess of the funds forthcoming from Miss Wilkey's estate.[1]

In order judicially to determine whether a charitable trust, which for some reason cannot be carried out in accordance with the prescribed plan of the testator, should be executed cy pres, it must be decided whether the testator's general intention was that his property should be applied to charity in any event, or only if such application can be made in the particular manner or form specified in his will. In applying the principle of cy pres the court does not arbitrarily substitute its own judgment for the desire of the testator, or sup-

---

[1] It appears in the testimony taken in the Orphans' Court that the sum of $100,000 would be necessary to build a duplicate of the First Presbyterian Church of Frankford, but there is only approximately $30,000 in the estate for the purpose.

ply a fictional testamentary intent, but, on the contrary, it seeks to ascertain and carry out as nearly as may be the testator's true intention; in so doing it assumes that where a particular purpose is apparently not an essential feature of his plan, the testator would prefer that his property should be applied to a purpose as similar as possible to that stated by him rather than that the trust which he attempted to create should fail altogether. Perhaps the best enunciation of the doctrine is that contained in Restatement, Trusts, section 399: "If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor." Or, as tersely stated in *City of Philadelphia v. Heirs of Stephen Girard,* 45 Pa. 9, 27, 28: "The rule of equity on this subject seems to be clear, that when a definite charity is created, the failure of the particular mode in which it is to be effectuated does not destroy the charity, for equity will substitute another mode, so that the *substantial* intention shall not depend on the insufficiency of the *formal* intention."

Cases are not infrequent in which the physical location of the edifice or institution provided for in a charitable trust has been held to be of secondary importance in comparison with the general purpose for which the erection of the building or the carrying on of the charitable activity was designed. Illustrations in our own state are: *Avery v. Home for Orphans of Odd Fellows of Pennsylvania,* 228 Pa. 58; *Kramph's Estate,* 228 Pa. 455, 461-463; *Mears's Estate,* 299 Pa. 217; *Curran's Estate,* 310 Pa. 434,

134

In the present case the Orphans' Court, after considering the provisions of the will and weighing the oral evidence in regard to the expressed sentiments of testatrix, her church affiliations, her family pride, and her attachment to the old homestead, found as a fact that her paramount purpose was to build and endow a Wilkey Memorial Presbyterian Church. With that conclusion we see no reason to disagree. Not only was her will limited to bequests to or for Presbyterian churches, but the evidence discloses that she was a faithful church attendant, and, as one of the witnesses expressed it, "a Presbyterian through and through from her ancestors down." Of course, she had also the motive, not uncommonly associated with a purpose otherwise wholly altruistic, to perpetuate her family name by a testamentary memorial, and in aid of that desire she provided that the church should be built on ground which to her was hallowed because it had been in the possession of her forefathers for upwards of two and a half centuries. Since, however, circumstances have made impossible the fulfillment of her plan in the exact manner designed by her, it is reasonable to believe that she would have desired, in all events, that a Wilkey Memorial Presbyterian Church should be erected and maintained, and if, for any reason, it could not be built on the site of her ancestral home, that it should be erected somewhere in the vicinity rather than not at all. The case, therefore, is one where the doctrine of cy pres is peculiarly applicable.

While it is not necessary to decide the point, it seems quite clear that the heirs of testatrix, here appellants, have no standing to question the disposition of testatrix's residuary estate. It is their contention that, according to the Act of July 7, 1885, P. L. 259, if, in the disposition of property by will made for any religious or charitable purpose, the object of the trust has ceased to exist, the property goes to the heirs at law and next of kin of the decedent. But the Act of

1885, which for a time largely suspended the operation of the cy pres doctrine in Pennsylvania, was followed by the Act of May 9, 1889, P. L. 173, and by the Act of May 23, 1895, P. L. 114, the latter amending section 10 of the Act of April 26, 1855, P. L. 328, and these provided, in the comprehensive contingencies specified therein, that, if the trust could not be carried out, the property should accrue to the public treasury. If, by reason of such legislation, the Act of 1885 was not technically repealed, it was at least so devitalized as to make its subsequent operative force practically negligible: *Kortright's Estate (No. 2)*, 237 Pa. 143, 147-149; *Toner's Estate*, 260 Pa. 49, 56, 57; *McCully's Estate*, 269 Pa. 122, 125-127; *Hunter's Estate*, 279 Pa. 349, 354, 355; *Thompson's Estate*, 282 Pa. 30, 35; *Darlington's Estate*, 289 Pa. 297, 304; *Jordan's Estate*, 329 Pa. 427. The provision in the Acts of 1889 and 1895 that no disposition for religious and charitable purposes shall fail "by reason of the objects ceasing" relates to cases where the trust cannot be executed in the manner prescribed, whether such impossibility arises by reason of conditions existing before, or changing after, the death of the testator,[2] and therefore, in either such event, the Act of 1885 is superseded by the later legislation.

The decree is affirmed; costs to be paid by appellants.

---

[2] Appellants argue that *"ceasing"* presupposes that the object of the trust had some initial validity, and the term therefore cannot refer to an object already impossible of realization at the time of the testator's death. By the same reasoning the phrase in the Act of 1885 *"has ceased* to exist" must also relate to an object initially capable of execution but which, prior to the testator's death, has become impossible of fulfillment. Such a construction would make the Act of 1885 even more inapplicable to the facts of the present case than the Acts of 1889 and 1895.