## Pentz's Estate

*John R. Jackson,* for petitioner.
*Paul M. Crider,* for respondents.

DAVISON, P. J., September 15, 1941.—Testatrix died in Greencastle, this county, on March 7, 1936, having made her last will and testament dated July 23, 1932, duly probated and letters testamentary issued thereon. In and by said will she provided, inter alia, as follows:

"I give and bequeath to the Farmers and Merchants Trust Company of Chambersburg, Pa., the sum of one thousand dollars, in trust to invest the same and pay the annual interest thereof on the salary of the minister of the Methodist Episcopal Church of Greencastle, Pa. Said trustee may pay one half of said sum for repairs to said church at any time repairs to the same may be necessary. . . ."

A first and final account was filed in said estate, an auditor appointed to make distribution of the balance shown thereon, the report of said auditor duly filed and confirmed by this court on May 14, 1937, and distribution made to the various legatees in accordance with said report. The estate was not sufficient to pay the legacies in full and each legatee received 72.047 percent of the amount bequeathed to him or her, the Farmers & Merchants Trust Company receiving as said trust fund $720.53.

The Methodist Episcopal Church of Greencastle, Pa., has disbanded and been properly dissolved by action of the congregation and the approval of the Central Pennsylvania Conference of the Methodist Church and all its property has been sold and disposed of and the corporation known as the Methodist Episcopal Church of Greencastle, Franklin County, Pa., dissolved by the Court of Common Pleas of Franklin County by decree dated August 3, 1940. . . . As a result of said actions and proceedings there is not now any Methodist Episcopal Church of Greencastle, Pa., in existence, or any person for it entitled to receive said trust fund or the income of the same.

On October 25, 1940, the petition of the Methodist Home for Children, Inc. was presented to this court setting forth the above facts and praying for an order authorizing and directing the Farmers & Merchants Trust Company as such trustee to pay over to petitioner said trust fund together with any accumulated interest thereon. On said petition a rule was granted on all the legatees named in said will to show cause why the trust fund should not be paid over to petitioner.

To this rule an answer was filed by Mrs. David G. Pentz, Mrs. Mary Poling, Mrs. Lottie Pentz Williams, William S. Pentz, Mrs. Harry J. Pentz, Charles A. Pentz, and Mrs. William B. Pentz, of said legatees. In and by said answer section 6 is as follows:

"Answering paragraph 6 of the petition, it is averred that each of the above-named parties were given spe-

cific legacies under the will of said decedent as set forth in said will, and that each of them received only 72.047 percent of the specific legacies given to them under said will, and that their legacies have not been paid in full, all of which appears in full in Orphans' Court record of Franklin County in Auditor's Report Docket, vol. V, p. 135."

On this petition and answer the matter was argued before us by counsel and is before us for disposition.

It is apparent from the pleadings and is stated to us by counsel in his argument for petitioner that he is invoking the cy pres doctrine, he contending that the beneficiary under the trust created in the will having ceased to exist the fund should go to another related charity and that the will of testatrix by its terms would indicate her interest in petitioner and it should receive said trust, particularly as it was named as residuary legatee in said will.

On the other hand counsel for respondents (those who answered) contends that, his clients and the other legatees not having received their legacies in full, and the object of this charitable bequest having ceased to exist, the fund should be applied to the payment of the balance due said legatees because they were not paid in full the amount of their respective legacies. It is his contention that the trust fund reverts to the estate of Lottie Pentz and should be distributed to the legatees under her will until they are paid in full and then to her residuary legatee.

With this position we cannot agree. The fund constituting the trust had passed completely out of the estate of said Lottie Pentz, and had assumed all the attributes of a trust fund being executed by a trustee for a particular charitable purpose. The will of Lottie Pentz was the instrument by which the trust came into being, but when it was fully created and functioning it ceased to be part of her estate, and was a separate entity to be administered by the trustee in accordance

with the instrument which created it and for the purposes set forth therein, or, in case of such a change as made that impossible, then according to the laws of the State. This trust had been functioning in the hands of the trustee from May 1937 until the Methodist Episcopal Church of Greencastle was dissolved in August 1940, and there was no power which could again have made the fund a part of the estate of Lottie Pentz. It matters not if a trust properly created exists one day, one year, or one century; it is a valid existing trust and must be considered and disposed of as such. It was no longer any part of the estate any more than were the legacies given to other legatees and awarded to and paid to them. It stood on its own feet as a charitable trust and must be disposed of as any other like trust. This being so, respondents as legatees under the will of Lottie Pentz have no standing in the question at issue and can receive no part of the trust fund.

The only remaining question is as to the proper disposition of the fund and whether under the cy pres doctrine it can be awarded to said Methodist Home for Children, Inc.

The Act of April 26, 1855, P. L. 328, sec. 10, as amended by the Act of May 23, 1895, P. L. 114, is as follows:

"That no disposition of property heretofore or hereafter made for any religious, charitable, literary or scientific use, shall fail for want of a trustee, or by reason of the objects being indefinite, uncertain or ceasing, or depending upon the discretion of a last trustee, or being given in perpetuity or in excess of the annual value hereinbefore limited, but it shall be the duty of any orphans' court, or court having equity jurisdiction in the proper county, to supply a trustee, and by its decrees to carry into effect the intent of the donor or testator, so far as the same can be ascertained and carried into effect consistently with law or equity; for which purpose the proceedings shall be instituted by leave of

the Attorney General of the Commonwealth, on the relation of any institution, association, corporation not for profit or individual, desirous of carrying such disposition into effect, and willing to become responsible for the costs thereof, subject to an appeal as in other cases in said courts respectively, and to be reviewed, reversed, affirmed or modified by the Supreme Court of this State; but if the objects of the trust be not ascertainable, or have ceased to exist, or such disposition be in excess of the annual value permitted by law, or in perpetuity, such disposition, so far as exceeding the power of the courts to determine the same by the rules of law or equity, shall be taken to have been made subject to be further regulated and disposed of by the Legislature of this Commonwealth, in manner as nearly in conformity with the intent of the donor or testator and the rules of law against perpetuities as practicable, or otherwise to accrue to the public treasury for the public use: Provided, That this act as amended shall not apply to any case which has been adjudicated prior to the adoption of this amendment."

The Act of May 9, 1889, P. L. 173, is as follows:

"That no disposition of property heretofore or hereafter made for any religious or charitable use, shall fail for want of a trustee or by reason of the objects ceasing, or depending upon the discretion of a last trustee, or being given in perpetuity, or in excess of the annual value limited by law; but it shall be the duty of any court having equity jurisdiction in the proper county, to supply a trustee, and by its decrees to carry into effect the intent of the donor or testator, so far as the same can be ascertained and carried into effect consistently with law or equity, subject to an appeal as in other cases in said courts respectively, and to be reviewed, reversed, affirmed or modified by the Supreme Court of this State."

In Wilkey's Estate, 337 Pa. 129, 134, it is held that these acts govern the disposition of property left to

charitable uses when the charity ceases to exist, it being there said:

"While it is not necessary to decide the point, it seems quite clear that the heirs of testatrix, here appellants, have no standing to question the disposition of testatrix's residuary estate. It is their contention that, according to the Act of July 7, 1885, P. L. 259, if, in the disposition of property by will made for any religious or charitable purpose, the object of the trust has ceased to exist, the property goes to the heirs at law and next of kin of the decedent. But the Act of 1885, which for a time largely suspended the operation of the cy pres doctrine in Pennsylvania, was followed by the Act of May 9, 1889, P. L. 173, and by the Act of May 23, 1895, P. L. 114, the latter amending section 10 of the Act of April 26, 1855, P. L. 328, and these provided, in the comprehensive contingencies specified therein, that, if the trust could not be carried out, the property should accrue to the public treasury. If, by reason of such legislation, the Act of 1885 was not technically repealed, it was at least so devitalized as to make its subsequent operative force practically negligible . . . The provision in the Acts of 1889 and 1895 that no disposition for religious and charitable purposes shall fail 'by reason of the objects ceasing' relates to cases where the trust cannot be executed in the manner prescribed, whether such impossibility arises by reason of conditions existing before, or changing after, the death of the testator, and therefore, in either such event, the Act of 1885 is superseded by the later legislation."

In A. L. I. Restatement of Trusts, vol. 2, p. 1208, §399, the rule is thus stated:

"If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct

the application of the property to some charitable purpose which falls within the general charitable intention of the settlor."

In comment (*a*) under this section it is said:

"The principle stated in this Section is called the doctrine of cy pres. The expression indicates the idea that where the exact intention of the settlor is not carried out, his intention is carried out 'as nearly as' may be.

"The doctrine of cy pres goes beyond these principles. Under this doctrine, which is peculiar to charitable trusts and charitable corporations, the court permits or directs the application of the trust property to a different charitable purpose from that designated by the settlor, under the circumstances stated in this Section."

In comment (*f*) it is said:

"If property is given in trust to be applied to a particular charitable purpose, and at the time when the property is given it is possible and practicable and legal to carry out the particular purpose, but subsequently owing to a change of circumstances it becomes impossible or impracticable or illegal to carry out the particular purpose, it is easier to find a more general charitable intention of the settlor than it is where the particular purpose fails at the outset. The court can fairly infer an expectation on the part of the settlor that in course of time circumstances might so change that the particular purpose could no longer be carried out, and that in such a case the settlor would prefer a modification of his scheme rather than that the charitable trusts should fail and the property be distributed among his heirs who might be very numerous and only remotely related to him. The courts are therefore more ready to apply the doctrine of cy pres where the particular purpose fails at some time after the creation of the trust than they are where the particular purpose fails at the outset."

In 3 Scott on Trusts, p. 2098, §399, under the heading "Failure of particular purpose where settlor had gen-

eral charitable intention. The doctrine of cy pres.", it is thus stated:

. "Where property is given in trust for a particular charitable purpose, the trust will not ordinarily fail even though it is impossible to carry out the particular purpose. In such a case the court will ordinarily direct that the property be applied to a similar charitable purpose. The theory is that the testator would have desired that the property be so applied if he had realized that it would be impossible to carry out the particular purpose. The theory is that although the testator intended that the property should be applied to the particular charitable purpose named by him, yet he had a more general intention to devote the property to charitable purposes. The settlor would presumably have desired that the property should be applied to purposes as nearly as may be like the purposes stated by him rather than that the trust should fail altogether.

"The principle under which the courts thus attempt to save a charitable trust from failure by carrying out the more general purpose of the testator and carrying out approximately though not exactly his more specific intent is called the doctrine of *cy pres*. The phrase is in the Anglo-French dialect, and is equivalent to the modern French *si pres*, meaning so near or as near. The intention of the testator is carried out as nearly as may be. . . . In the exercise of the *cy pres* power, however, the court may permit the trust property to be applied to a charitable purpose other than that designated by the terms of the trust, where it has become impossible to accomplish the designated purpose. In other words, the *cy pres* doctrine involves the exercise of a power much more extensive than the ordinary power of the court to permit deviations from the terms of the trust."

In Keeler's Estate, 41 D. & C. 182, 186, the definition of cy pres doctrine is well stated when Judge Holland says:

" 'It is, briefly stated, that rule of equity that, where a trust is about to fail for any reason whatever,

whereby its exact terms cannot be carried out, such imminent failure will be forestalled and prevented by the court of proper jurisdiction awarding the fund in trust for a cognate or similar purpose approximating the general intent of the testator or settlor as far as possible, provided, that such trust is in its general character for a religious, charitable, or publicly beneficial purpose.' "

In Wilkey's Estate, supra, the Supreme Court at page 132 sets forth clearly when and how the doctrine of cy pres applies. It is there said:

"In order judicially to determine whether a charitable trust, which for some reason cannot be carried out in accordance with the prescribed plan of the testator, should be executed cy pres, it must be decided whether the testator's general intention was that his property should be applied to charity in any event, or only if such application can be made in the particular manner or form specified in his will. In applying the principle of cy pres the court does not arbitrarily substitute its own judgment for the desire of the testator, or supply a fictional testamentary intent, but, on the contrary, it seeks to ascertain and carry out as nearly as may be the testator's true intention; in so doing it assumes that where a particular purpose is apparently not an essential feature of his plan, the testator would prefer that his property should be applied to a purpose as similar as possible to that stated by him rather than that the trust which he attempted to create should fail altogether. Perhaps the best enunciation of the doctrine is that contained in Restatement, Trusts, Section 399: 'If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention

of the settlor.' Or, as tersely stated in *City of Philadelphia* v. *Heirs of Stephen Girard*, 45 Pa. 9, 27, 28: 'The rule of equity on this subject seems to be clear, that when a definite charity is created, the failure of the particular mode in which it is to be effectuated does not destroy the charity, for equity will substitute another mode, so that the *substantial* intention shall not depend on the insufficiency of the *formal* intention.' "

We are satisfied that the cy pres doctrine is applicable to the instant case. It is apparent that testatrix desired her estate primarily to be devoted to charitable purposes and to those charities connected with the Methodist Church. It is true that she gives minor legacies to individuals, but her large bequests are to Methodist charities, $1,000 in trust for the Methodist Church in Greencastle, $1,000 to the Methodist Home for Children at Mechanicsburg, Pa., and this home is named as residuary legatee, and $1,000 to the Methodist Home for the Aged at Tyrone, Pa. One of these bequests, the one in trust for the Methodist Church in Greencastle, fails after having been fully established and functioning for several years, and we must decide to whom it is to be transferred, or in other words who is to succeed to its benefits. It is clear that no particular Methodist church in some other locality could be substituted for the charity named, as testatrix had no interest in some other church as indicated by her will, and the rule is that the property is to be applied to some charitable purpose which falls within the general charitable intention of the settlor, which can only be ascertained from her will. There were three charitable institutions remembered in her will in equal specific amounts: (1) The Methodist Church in Greencastle, which has passed out of the picture; (2) the Methodist Home for the Aged at Tyrone, Pa., and while it was served with said rule it has not answered or appeared, and we are justified in holding that it has no interest in the application of the fund; and (3) the Methodist Home for Children at Mechanicsburg, the petitioner, which was not only

given a legacy in said will equal to the others but was also designated by testatrix as her residuary legatee, thereby showing a special interest in this home on the part of the settlor of the trust. We are satisfied that by awarding said fund for the benefit of said home we will be carrying out the intention of testatrix as nearly as may be.

In awarding the trust to the substituted beneficiary we do not, however, award to it the fund itself. The trust is not terminated but its benefits are transferred to another charity. That charity cannot rise to a higher level than the one it succeeds and that level is fixed by the will of testatrix, a trust with the income paid to the cestui que trust, whoever it may be, the Methodist Church of Greencastle, or its successor, the Methodist Home for Children. We will direct that the said home be substituted for said church in said trust. In Keeler's Estate, supra, it will be noted that it speaks of awarding the fund in trust for a cognate or similar purpose, and that is what we will do by awarding this fund in trust, for said Methodist Home for Children.

Now, September 15, 1941, it is hereby ordered and decreed that the trust created by the second paragraph of the said will of Lottie Pentz for the benefit of the Methodist Episcopal Church of Greencastle, Pa., be now held and administered for the benefit of the Methodist Home for Children at Mechanicsburg, Pa., which is hereby substituted as beneficiary under said trust for said Methodist Episcopal Church of Greencastle, Pa., which has ceased to exist. Said Methodist Home for Children at Mechanicsburg, Pa., to stand in the place and stead of said Methodist Episcopal Church of Greencastle, Pa., in said trust, and said Farmers & Merchants Trust Company, trustee, to pay the annual income from said trust fund to said Methodist Home for Children at Mechanicsburg, Pa. The costs of this proceeding, including a proper fee to the attorney for said petitioner, to be paid out of said fund.