## Hildebrand's Estate

*J. Willard Paff*, of *Smith & Paff*, for accountant and certain heirs.

LAUB, J., November 16, 1942.—The above estate came before said court for audit at the regular orphans' court day of said court on October 28, 1942, but the audit of same was continued to October 30, 1942.

From the record papers and the testimony taken at that time, we make the following findings of fact:

1. Laura Hildebrand died testate April 18, 1940.

2. At the time of her death she resided in the City of Easton, said county.

3. Her last will and testament provides as follows:

"After deducting five hundred dollars for my funeral expenses and paying my debts if any,

"I leave all my money, and real estate to found a home for aged men, to be called 'The Thomas Hildebrand Home.' The real estate is to be sold. I appoint my niece, Laura H. White, Executrix.

LAURA HILDEBRAND.

Jan. 19, 1940."

4. The real estate of decedent has been sold in accordance with her directions as contained in her said last will and testament.

5. The balance in hand for distribution amounts to $13,367.11.

6. The heirs at law and next of kin of said decedent are Rae H. Fleming, a half sister, Agnes H. Conahan, a daughter of testatrix's deceased brother, William L. White, Jr., and J. Ludlow White, nephews, being sons of testatrix's deceased sister, and Laura H. White and Dorothy White, nieces, being daughters of testatrix's deceased sister.

7. Said last-mentioned parties are all living and of full age.

8. There is no home for aged and infirm men in the County of Northampton, or in the area surrounding same, other than the portion of the buildings of the Northampton County Institutional District which is a public institution supported by the taxpayers of said county.

9. There are no homes for aged and infirm members of any fraternal organization which maintains homes

for such purposes in said county, or the area surrounding same.

10. Thomas Hildebrand, a brother of testatrix, predeceased her, and at the time of his death was not a member of any fraternal organization such as the Masons, Elks, Odd Fellows, Moose, or the like, which organizations maintain homes for aged and indigent members thereof.

11. The intention of testatrix in making the last paragraph of her will was not for any charitable purpose, but merely that her brother's name should be perpetuated.

12. The direction in testatrix's will "to found a home for aged men, to be called 'The Thomas Hildebrand Home' " is uncertain and not ascertainable, as well as impracticable.

13. The hereinbefore-named William L. White, Jr., has made certain assignments of his interest in decedent's estate, which appear in the record as made to Eli Reimer and Dorothy White.

At the audit the uncontradicted testimony was that the real estate of decedent had been sold by her executrix in accordance with the directions contained in her will, and that therefore there was no real estate belonging to her on which to build a home for aged men.

The uncontradicted testimony further showed that with a fund such as in hand for distribution, to wit, $13,367.11, it was impossible to build a home such as provided for by testatrix in her last will and testament, and that the object expressed by her was impossible of ascertainment and accomplishment with that amount of money, and further that the object was uncertain.

At first impression it would appear that the charitable provision in the last will of said decedent must fail because the will does not bear the signature of two disinterested and credible witnesses as provided by section 6 of the Wills Act of June 7, 1917, P. L. 403.

However, the sixth section of said act has been twice amended, to wit, by the Act of July 2, 1935, P. L. 573, and the Act of May 16, 1939, P. L. 141.

The Act of July 2, 1935, supra, amends section 6 by striking therefrom the phrase "attested by two credible, and, at the time, disinterested witnesses."

Therefore, the provision in her will to found a home for aged men to be called "The Thomas Hildebrand Home" does not fail because of the absence of two disinterested and credible witnesses to her signature.

There are four acts of assembly governing the devolution of charitable bequests, the first of which is the Act of April 26, 1855, P. L. 328, as amended by the Act of May 23, 1895, P. L. 114, 10 PS §13. The effect of said last-mentioned act provides that a disposition to a religious or charitable use shall not fail for want of a trustee and that the court is given cy pres power.

The second of these acts is section 1 of the Act of July 7, 1885, P. L. 259, 20 PS §196, which is as follows:

". . . in the disposition of property by will made or to be made for any religious, charitable, literary, educational, or scientific use or purpose, if the same shall be void for uncertainty, or the object of the trust be not ascertainable, or has ceased to exist or be an unlawful perpetuity, such property shall go to the heirs at law and next of kin, of the decedent as in the case of persons who have died or may die intestate."

The Act of May 9, 1889, P. L. 173, provides that no disposition of property made for any religious or charitable use shall fail for want of a trustee, etc. Said act also gives cy pres power to the courts.

The last act, to wit, that of May 23, 1895, P. L. 114, was an amendment of the Act of April 26, 1855, supra.

All of these acts, with the exception of the Act of July 7, 1885, supra, substantially provide that the courts shall have cy pres power if the objects of the trust be not ascertainable, or have ceased to exist, or

the disposition in the will is in excess of the annual value permitted by law or in perpetuity.

The Act of May 23, 1895, also provided that proceedings to claim the fund may be instituted by leave of the Attorney General of the Commonwealth upon the relation of any institution, association, corporation not for profit, or individual, desirous of carrying such disposition into effect, and willing to become responsible for the costs thereof.

There is no such proceeding in the instant case. At the audit no person or corporation appeared to claim the fund in hand for distribution, but it was claimed by the heirs at law and next of kin of said testatrix because the disposition she made in her will was unascertainable and impracticable.

The aforesaid Acts of April 26, 1855, and July 7, 1885, are discussed in Alter's Estate, 4 Pa. C. C. 558, where it was held by the late Judge Penrose, of the Orphans' Court of Philadelphia, as follows (syllabus) :

"The Act of July 7, 1885, P. L. 259, was intended to repeal the Act of April 26, 1855, P. L. 331, so far as it conferred *cy pres* powers upon the courts and the legislature in cases of gifts for charitable, etc., purposes, where the objects were 'indefinite, uncertain, or ceasing or depending upon the discretion of a lost trustee,' by providing that such a gift should go to the heirs or next of kin of the decedent. But where the testator dies within a calendar month after the execution of this will, the Act has no application, and the legacy passes under the provisions of §11 of the Act of 1855."

"The purpose of the Act of July 7, 1885, P. L. 259, was to vest title in 'the heirs at law and next of kin,' if at the death of a testator the specific provisions of a testamentary paper cannot then be effective for any of the reasons named in the statute. The act does not work a divestiture of an estate which has once become

vested": Harman et al. v. Romberger et al., Trustees, 34 Pa. C. C. 593 (syllabus).

The aforesaid Act of 1895 has received interpretation in the case of Hamilton et al. v. The John C. Mercer Home, 19 Dist. R. 169, wherein it was held as follows (syllabus):

"Where the *cy pres* power of the courts is not large enough to save a charity, the legislature, by the Act of July 7, 1885, P. L. 259, waived its right to dispose of the fund and yielded it to the next of kin; but, by the Act of May 23, 1895, P L. 114, the legislature resumed its right to apply a larger *cy pres* doctrine."

"The true test of a legal public charity is the character of the object sought to be attained, the purpose to which the gift is to be applied; not the motive of the donor": Fire Insurance Patrol v. Boyd, 120 Pa. 624 (syllabus).

Applying the above definition of a legal public charity to the provisions of the instant will, we find from the record that the character of the object sought to be obtained by testatrix was to perpetuate the name of testatrix's deceased brother by the building and equipping of a home for aged men. However laudable her purpose was, it is not ascertainable because the fund in hand is not sufficient and the uncontradicted evidence is to the effect that it is not only unascertainable but impracticable. With that testimony we agree.

Testatrix's will was written since World War II began, and at this time we are in the third year of that war but in the first year of the actual fighting participation of the United States therein. Nevertheless, by reason of this World War, certain priorities and restrictions have arisen relative to building operations. Furthermore, were it possible to buy a piece of real estate and build, equip, and furnish such a home for aged men, there is no fund with which to endow it and carry it on for any period of time.

The language of the instant testatrix's will created a charity in accordance with the decision in Archambault's Estate, 308 Pa. 549, wherein it was held as follows (syllabus) :

"A charity in a legal sense may be defined as a gift to be applied, consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government."

In Wilkey's Estate, 337 Pa. 129, 135, Mr. Justice Stern, speaking of the Act of 1885, supra, and referring to the aforesaid Acts of May 9, 1889, and May 23, 1895, says:

"If, by reason of such legislation, the Act of 1885 was not technically repealed, it was at least so devitalized as to make its subsequent operative force practically negligible . . ."

However, a diligent search made by counsel and the writer of this opinion leads us to state that we find no repeal of the aforesaid Act of July 7, 1885, and we hold that it has sufficient vitality to apply to the facts in the instant case.

Therefore, we conclude that the first paragraph of the instant will must be declared null and void and the balance in hand for distribution awarded to the relatives and next of kin of Laura Hildebrand, deceased, as if she had died intestate, because the same is void for uncertainty and the object of the trust is not ascertainable.

Counsel for the accountant asked for an allowance to the executrix and himself, as well as to Stanley D. Howell, a real estate agent.

On page 18 of the record, testimony is given as to what Mr. Howell did in procuring bidders at the public

sale of the real estate, one tract of which was purchased by a person induced by him to come and bid. It further appears he was continually in touch with the executrix and her counsel relative to the sale of the real estate and the handling of same before it was sold. Therefore, as $100 is regarded by the executrix and her counsel as a fair compensation for his services, we allow him the sum of $100.

Counsel for the accountant was of great assistance to the auditing judge in the manner in which the record was made up, and a comprehensive and thorough brief was prepared by him and filed with the auditing judge.

The record shows that the executrix not only attended the audit, but testified and ascertained the heirs at law and next of kin of testatrix and gave valuable assistance to her counsel and Mr. Howell. We, therefore, in addition to the allowance to Mr. Howell, award J. Willard Paff, of the law firm of Smith & Paff, $200, and to Laura H. White, executrix, an additional compensation of $200.

And now, November 16, 1942, it is ordered, adjudged, and decreed as follows:

(a) The bequest or charity set forth in the first paragraph of the last will and testament of Laura Hildebrand to found a home for aged men and to be known as "The Thomas Hildebrand Home" is invalidated and set aside.

(b) The balance in hand for distribution, after the deduction of costs of audit and the hereinbefore allowances, is directed to be awarded to the heirs at law and next of kin of decedent as if she had died intestate.

(c) Counsel for the accountant is directed to promptly present to the auditing judge a schedule of distribution of the fund in hand for same in accordance with the directions herein contained.

(d) The costs of audit are to be paid by the estate of said decedent.

' (e) The clerk of said court will enter this order as a decree nisi and give notice to the parties of record or their counsel, and if no exceptions are filed to same within 10 days, at the expiration of that time he is directed to mark this decree as a final decree.