Williams Estate.

Argued January 8, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

. *John Cupp,* with him *Williamson & Cupp,* for appellant.

*G. Mason Owlett,* with him *Charles G. Webb* and *Robert F. Cox,* for appellee.

OPINION BY MR. JUSTICE JONES, March 25, 1946:

Virginia O. Williams, unmarried, died testate on June 14, 1932, "in her sixties". She had been a lifelong resident of Wellsboro, Tioga County, Pennsylvania, where her parents, Henry W. and Sarah E. Williams, who had been prominent in the life of the community, had also lived for many years.

By her will, the testatrix devised and bequeathed the residue of her estate to her executors, in trust, ". . . for the purpose of establishing and founding a charitable Home, in the dwelling house I now own and occupy, and on the lot and adjacent grounds contiguous thereto, under the name, style and title of 'HENRY W. AND

SARAH E. WILLIAMS HOME FOR AGED WOMEN,'
who have become reduced in circumstances, and are unable to support themselves, but who are not so impoverished as to be fit charges of the Overseers of the Poor or as paupers, but who are willing to be assisted and are able to pay down a sum of money amounting to at least Four Hundred ($400.00) Dollars . . .". The will expressly limited prospective beneficiaries "of this bequest" (i.e., the Home) to *residents of the County of Tioga,* State of Pennsylvania. The testatrix directed her executors to obtain a charter for the Home as a charitable corporation and specified that "the first Board of Directors of the said proposed corporation shall consist of three members" whom she designated and appointed by her will, all being therein recited as "of the Borough of Wellsboro". Vacancies in the Board were to be filled by appointment by the executors and, if no executor survived, then by the Board of Elders of the First Presbyterian Church of Wellsboro.

The will contains the following further provision with respect to the memorial which the Home was intended to evidence:

"FIFTEENTH: I further direct that before or immediately after the opening of the said proposed Home, the Board of Directors and officers of the said corporation, shall authorize and procure to be placed in a secure and permanent manner in the front wall of my said dwelling house, an appropriate bronze tablet, with the following inscription thereon, in letters of sufficient size to be read from the street:

'HENRY W. AND SARAH E. WILLIAMS HOME FOR AGED WOMEN, FOUNDED AND ENDOWED BY THEIR DAUGHTER, VIRGINIA O. WILLIAMS, TO PERPETUATE THEIR MEMORY.'

"The date of the foundation to be placed thereon shall be the year of my death."

As shown by the third and final account of the surviving executrix, there was available for distribution to

the residuary beneficiary a balance composed of personalty of $123,000, roundly, and realty consisting entirely of the residence property of the testatrix in Wellsboro (valued at $5,000) which the will designated as the situs of the proposed Home. At the audit of the account, two charitable corporations, The Green Home of Roaring Branch, Tioga County, and the Soldiers and Sailors Memorial Hospital of Wellsboro, each applied (with the consent of the Attorney General of the Commonwealth) for an award of the residuary estate on the grounds that it was insufficient to carry out the testatrix's express directions with respect to the independent establishment and maintenance of the Home and that the situation so obtaining, coupled with the general charitable intent of the testatrix, called for the court's exercise of its cy pres power as conferred by the Act of April 26, 1855, P. L. 328, Sec. 10, as amended by the Act of May 23, 1895, P. L. 114, Sec. 1 (10 P.S. § 13). The learned auditing judge filed an extensive adjudication wherein the facts essential to an application of the cy pres doctrine were found to exist and the residuary estate was awarded to the Soldiers and Sailors Memorial Hospital. A final decree was accordingly entered from which The Green Home appeals.

Each of the twenty-three separate assignments filed by the appellant is designed to point error in the court's award of the residuary estate to the Soldiers and Sailors Memorial Hospital instead of to The Green Home. The assignments of error need not be considered separtely. Collectively, the questions which they raise are (1) whether the use of the estate, as awarded by the court below, sufficiently approximates the charitable uses which the testatrix intended and (2) if not, whether the use of the estate by The Green Home, upon an award thereof to it, would do so.

The auditor found that the residuary estate available for distribution was insufficient for the purpose of carrying out the testatrix's intent in accordance with

her express directions and that her will evidenced a general charitable intent with respect to the ultimate use of her residuary estate. Not only does the evidence in the case amply support both of those findings but no exceptions thereto were filed by anyone. The nonappearance of heirs at law or next of kin, if any there are, may be ascribed to their lack of standing to object to a cy pres execution of a charitable use of the estate: cf. *Wilkey's Estate,* 337 Pa. 129, 134-135, 10 A. 2d 425. Nor does the Commonwealth lay any claim to the estate as upon an alleged complete failure of the testatrix's charitable intent. See Amendment of May 23, 1895, P. L. 114, which reinserted in the law the Commonwealth's right to an estate upon the failure of a specified trust as that right had originally existed under Section 10 of the Act of 1855. Compare the intervening Act of July 7, 1885, P. L. 259, which directed that the property of a failing trust should pass to the heirs at law and next of kin of the testator or settlor. As required by the Act of 1855, as well as by the 1895 amendment thereof, the proceeding below, looking to a cy pres execution of the trust in keeping with the testatrix's general charitable intent, was instituted with the express leave of the Attorney General of the Commonwealth.

The Act of 1855, cit. supra, and as amended by the Act of 1895, provides "That no disposition of property heretofore or hereafter made for any religious, charitable, literary or scientific use, shall fail for want of a trustee, or by reason of the objects being indefinite, uncertain or ceasing . . . but it shall be the duty of any orphans' court, or court having equity jurisdiction in the proper county, to supply a trustee, and by its decrees to carry into effect the intent of the donor or testator, so far as the same can be ascertained and carried into effect consistently with law or equity . . .". Where property which has been devised and bequeathed for a specific charitable use proves insufficient for the establishment and maintenance of the trust in the precise manner di-

rected by the testator, there is a ceasing of the trust within the meaning of the Act of 1855: see *Wilkey's Estate,* supra; also Restatement, Trusts, § 399, and Comment (g). And, as we have already pointed out, the fact competently found by the auditor, that the testatrix's general intent was that her property should be devoted to a charitable use in any event, stands unimpeached. The case therefore properly calls for an exercise of the court's cy pres power to prevent a failure of the testatrix's general charitable intent.

However, as we said in *Wilkey's Estate,* supra, at pp. 132-133,—"In applying the principle of cy pres the court does not arbitrarily substitute its own judgment for the desire of the testator, or supply a fictional testamentary intent, but, on the contrary, it seeks to ascertain and carry out as nearly as may be the testator's true intention; . . .". But, once the applicability of the cy pres doctrine is indicated, the problem forthwith becomes one of approximating the testator's express direction as nearly as possible and without doing violence thereto. In an early and leading case of this State, subsequent to the Act of 1855 (*The City of Philadelphia v. The Heirs of Stephen Girard,* 45 Pa. 9, 28), it was said that "The meaning of the doctrine of *cy pres,* as received by us, is, that when a definite function or duty is to be performed, and it cannot be done in exact conformity with the scheme of the person or persons who have provided for it, it must be performed with as close *approximation* to that scheme as reasonably practicable; and so, of course, it must be enforced. It is the doctrine of approximation. . . ." That statement as to the object to be attained by an application of the cy pres doctrine has since been approved and followed by this Court a number of times without departure: see *Connors v. Ahearn,* 342 Pa. 5, 7, 19 A. 2d 388; *Wilkey's Estate,* supra; *Curran's Estate,* 310 Pa. 434, 445, 446, 165 A. 842; *Mears's Estate,* 299 Pa. 217, 222, 149 A. 157; *Thompson's Estate,* 282 Pa. 30, 37, 127 A. 446; *Toner's Estate,* 260 Pa. 49, 58, 103 A. 541; *Kramph's Estate,* 228 Pa. 455, 463, 77 A. 814.

The learned auditing judge, in his adjudication, discussed with particularity and discrimination the elements of close approximation to the testatrix's charitable intent and her specific desires which an award of the fund to the Soldiers and Sailors Memorial Hospital would effect and which an award to The Green Home would not so accomplish. It can serve no useful purpose to reiterate here in detail the reasons supporting the auditor's conclusions in such regard. It is sufficient to point out that, through the award of the property to the Soldiers and Sailors Memorial Hospital, it will be used for the shelter, care and comfort of *aged women* of *Tioga County* who are in need of such relief. The facilities of the charity will be made available to the beneficiaries in the testatrix's *residence in Wellsboro.* The property will be known as the *"Henry W. and Sarah E. Williams Home for Aged Women"* and will be publicly identified as the testatrix's memorial to her parents by the *tablet* which the Hospital will erect at the place and in the form and manner as prescribed by the will of the testatrix. None of those things would be achieved by an award of the property to The Green Home which conducts its charity, a home for aged men and women (women preferred), at Roaring Branch, some thirty miles distant from Wellsboro, where it has accepted as applicants for admission women (no men to date, it is true) from all of Lycoming County and from Bradford County as well as Tioga County. The fulfillment of the testatrix's desire to perpetuate the memory of her mother and father through the use of the Wellsboro residence as a charitable home is entirely ignored by the proffered undertaking of The Green Home. Such a testamentary desire is not only a legitimate one but has been recognized as an important factor in the application of the cy pres doctrine: see *Randall's Estate,* 341 Pa. 501, 508, 19 A. 2d 272; *Wilkey's Estate,* supra, at p. 134.

One matter yet needs be considered. Originally, it was the plan and intention of the Hospital's manage-

ment to use the Williams property as a place for the care and residence of convalescent aged women who had been hospitalized. The evidence discloses an urgent need for such a facility. Although the Hospital did not begin to function, as such, until 1942 when it was opened with accommodations for thirty-five bed patients, it has been called upon to serve more than that number and "now uses forty-seven beds by occupying corridors and rooms not designed to be used for patients". The number of convalescents always on hand backs up the flow of patients through the Hospital and, of the convalescents, a number are aged women. By providing in the Williams residence for convalescent aged women patients of the Hospital, it was hoped that thereby the congestion of patients in the Hospital would be relieved and its facilities made more widely available to the community in general. However, the court below in its decree of award imposed the following conditions which the Hospital has affirmatively accepted in writing:

"(d) When the home is ready for occupancy it shall be used for the accommodation of aged and infirm women who have received medical or surgical attention in the hospital, but are not yet so fully recovered as to be able to go to their homes.

"(e) When ready for occupancy, the home shall also receive and care for worthy and aged women of said Tioga County who have not been hospitalized, but who are so infirm in health that they are unable entirely to care for themselves and are in need of aid by way of rest, maintenance and medical attention which they cannot otherwise receive. They shall be women who are not able to support themselves without help, but are able to pay a substantial proportion of the expense of their support and physical and medical care. These applicants shall be preferred as to admission over those mentioned in clause (d), and shall pay such a sum weekly, monthly, or yearly, as shall be determined by the directors, but which shall in no case exceed the actual cost less an allowance

of the proper proportion for each individual of the whole income from the fund."

The appellant argues that, if the Hospital complies with the condition imposed by paragraph (e) above, its conduct will be ultra vires as it is not authorized by its charter to operate a home for aged women. It is our opinion that the service to be performed by the Hospital under paragraph (e) of the decree is but incidental to that required by paragraph (d) ; that the latter provision contemplates the performance of a proper corporate function of the Hospital; and that the added imposition (itself concerned with the care and treatment of aged women) will not render the Hospital's compliance ultra vires: see *Jacksonville, Mayport, Pablo Railway and Navigation Company v. Hooper*, 160 U.S. 514, 525-526. In that case, the Supreme Court of the United States quoted at p. 526 with approval from Chief Justice BIGELOW of Massachusetts in part as follows:

" 'Undoubtedly the main business of a corporation is to be confined to that class of operations which properly appertain to the general purposes for which its charter was granted. But it may also enter into and engage in transactions which are incidental or auxiliary to its main business, which may become necessary, expedient, or profitable in the care and management of the property which it is authorized to hold under the act by which it was created.' "

We find no error in the decree appealed from. The case was heard and disposed of by the court below with the utmost thoroughness and with marked fairness to both of the contending parties. The appellant has shown no just cause for complaint.

The decree of the court below is affirmed at the appellant's costs.