## Porter Trust

Exceptions before Pawelec, Adm. J., Klein, Shoyer, Gutowicz, Bruno and Silverstein, JJ.

*Norman H. Brown* and *Mary G. Lawler*, for accountant.

*John K. Young*, for Masons.

*Thomas M. Thistle, Jr.*, for Isaac T. H. Porter.

*Louisa S. Mygatt, Paul Wm. Putney*, and *Robert L. Freedman*, for R. Porter Smith.

*Lawrence Barth*, for Commonwealth.

ADJUDICATION BY KLEIN, J., JUNE 25, 1980:

The reason for filing the present account is the death on May 15, 1979 of Leila M. B. Smith, the last income beneficiary, whereupon the trust terminated. Leila M. B. Smith had a power of appointment by will over $100,000 of the principal of the trust, which she exercised in favor of her three children, R. Porter Smith, Leila S. Heytze, and Frances S. Dean.

Decedent directed in Item Eleventh (q) of his will that the trust terminate at the death of the last income beneficiary and that $200,000 be distributed to the Grand Lodge of Masons "to be used in the erection and construction of a suitable building upon its grounds at Elizabethtown, Pennsylvania, as a Home for Boys or Girls whichever, in the judgment of said Grand Lodge or its Committee on Homes, may be more needed or desirable." He directed in Item Eleventh (r) that the remainder be distributed "to such person or persons as would be entitled thereto under the laws of Pennsylvania, had I died intestate, unmarried and without issue." ***

There are minors and unborn persons who may have contingent remainder interests upon the happening of somewhat remote contingencies. Mrs. Lawler has submitted to the court a statement, as part of the preliminary audit statement, from which it appears that these interests are represented by the trustee under the will of Mary Ella Bolgiano, deceased sister of decedent, and that these interests would arise only if decedent's intestate heirs are determined as of the time of his death rather than as of the time of the death of the last income beneficiary. Under these circumstances, the court has exercised its discretion under Section 7183(2) and 3504 of the Probate, Estates and Fiduciaries Code and waived the appointment of a guardian and trustee ad litem.

At the audit the accountant submitted two questions to the auditing judge as requiring adjudication. The first question is stated as follows:

"In Item Eleventh (q) of the will, testator directed, upon the death of the last income beneficiary of his residuary trust, that $200,000 be distributed to the Grand Lodge of Free and Accepted Masons 'to be used in the erection and construction of a suitable building upon its grounds at Elizabethtown, Pennsylvania, as a Home for Boys or Girls whichever, in the judgment of said Grand Lodge or its Committee on Homes, may be more needed or desirable.'
Because it is not realistic to construct a facility of the type

contemplated, counsel for the Masons will petition this court for approval to add the bequest to the Masons' General Endowment Fund to be used for the care and support of the children presently maintained at the Masonic Home in Elizabethtown, Pennsylvania."

A petition has been filed by the Grand Lodge requesting a modification of the will of Harry T. Porter to provide for an award of $200,000 to the Trustees of the Consolidated Fund of the Grand Lodge to be invested as a separate fund to be known as the Harry T. Porter Memorial Fund, the income therefrom to be used for the benefit of boys and girls who reside at the Masonic Homes at Elizabethtown, Pennsylvania, and for such youth programs as may be conducted at the Masonic Homes. The Attorney General of the Commonwealth has joined in the prayer of the petition.

One of the residuary beneficiaries, R. Porter Smith, objected to the proposed modification, arguing that the $200,000 gift to the Masons should pass to the residuary beneficiaries. At the hearing on December 31, 1979 the testimony of the Hon. Walter P. Wells, Grand Master of the Masons in Pennsylvania, was taken as to the need for the requested modification of decedent's will. At the close of the hearing I suggested the possibility of distributing all of the estate except for the $200,000 in dispute and referring the disposition of that fund to an amicus curiae, as we did in Dunlap Trust, 29 FIDUC. REP. 573.

Thereafter Mr. Young, on behalf of the Grand Lodge of Masons, and Mr. Freedman, on behalf of the objectant, took the position that the appointment of an amicus curiae was not necessary and suggested that the question at issue should be decided on the present record. It should also be noted for the record that Mrs. Lawler, at my request, sought and obtained the views of the four other residuary beneficiaries to the proposed modification of the will. Her letter to me dated March 26, 1980, which is annexed hereto, makes it clear that all four of them support the position taken by the Grand Lodge of Masons. Under these circumstances, I shall reconsider my proposal for an amicus curiae and will make the determination myself. I am satisfied that there is ample authority to do so by the application of the cy-pres doctrine.

We have no difficulty in finding that the testator's general intent as to the $200,000 fund was a charitable one and that

this sum is now insufficient to carry out his specific intention. In *Williams Est.*, 353 Pa. 638, testator's estate was insufficient to carry out a testamentary trust for the purpose of founding a home for aged women to be established in testatrix's home. In that case it was shown that her general intentions were to devote her estate to a charitable use and on that basis the court invoked its cy-pres power to prevent a failure of purpose. See also *Dunlap Trust,* supra, where we quoted with approval the holding and rationale of *Williams Estate.*

Having concluded that the cy-pres doctrine applies, the objection of R. Porter Smith must be dismissed. The court's function is then "to ascertain and carry out as nearly as may be the testator's true intention": *Wilkey's Est.,* 337 Pa. 129, 132.

Testator's original intention was that his bequest be used to construct a residential building for boys or girls on the grounds of the Grand Lodge of Masons at Elizabethtown, Pennsylvania. When he wrote his will in 1925 there was a real need for funds to provide adequate facilities for the boys and girls who sought admission to the Masonic Homes. However, during the years since 1925 the number of children residing in the Homes or seeking admission has declined and the facilities have increasingly been made available for various youth programs benefiting non-residents. Thus, there is no present need for an additional building. The income from the $200,000 fund can, however, be used to benefit those children still in residence at the Homes and the youth programs that are being conducted there.

There can be no doubt that the closest approximation of testator's intention would be to apply his bequest to these purposes. I have therefore signed a Decree this day which reads as follows:

"And Now, this 25th day of June A. D. 1980, on consideration of the petition of The Right Worshipful Grand Lodge of The Most Ancient and Honorable Fraternity of Free and Accepted Masons of Pennsylvania and Masonic Jurisdiction Thereunto Belonging, and on motion of John K. Young, Esquire, it is Ordered, Adjudged and Decreed as follows:

That the bequest of $200,000 set forth in paragraph 11 (q) of the Will of the said Harry T. Porter is hereby modified and an award of the said $200,000 is made to the Trustees of the Con-

solidated Fund of the Grand Lodge to be by said Trustees invested as a separate fund to be known as the Harry T. Porter Memorial Fund and the income therefrom used for the benefit of boys and girls resident at the Masonic Homes at Elizabethtown, Pennsylvania, which Homes are owned and operated by the said Grand Lodge, and for such youth programs as may be conducted at the said Masonic Homes at Elizabethtown, Pennsylvania; and

That a plaque, suitably inscribed, be placed upon the wall of the building presently occupied by the children at the Masonic Homes."

OPINION BY GUTOWICZ, J. :

Before us are exceptions filed by one of five individual residuary beneficiaries to the adjudication of Klein, S.J. which awarded a $200,000 bequest to the Right Worshipful Grand Lodge of Free and Accepted Masons of Pennsylvania (hereinafter referred to as Grand Lodge), the income thereof to be used for the benefit of boys and girls resident at the Masonic Homes at Elizabethtown, Pennsylvania. The four remaining residuary beneficiaries, as well as the Attorney General of the Commonwealth of Pennsylvania, supported the position of the Grand Lodge.

The exceptions, in summary, are that the auditing judge erred in finding that the testator's general intent as to the $200,000 bequest to the Grand Lodge was a charitable one; that he erred in concluding that the cy pres doctrine applies and that he erred in concluding that there can be no doubt that the closest approximation of testator's intention would be to apply his bequest to use the income to benefit the children still in residence at the Masonic homes and the youth programs that are conducted there.

Harry T. Porter died on May 17, 1929 leaving a will dated July 3, 1925. The particular gift in question is made in Item 11 (q) which provided:

"Upon the expiration of said trust, and out of the balance remaining in the possession of my said executors and trustees, to pay unto the Right Worshipful Grand Lodge of Free and Accepted Masons of Pennsylvania, the sum of two hundred thousand dollars, to be by it used in the erection and construction of a suitable building upon its grounds at Elizabethtown, Pennsylvania, as a Home for Boys or Girls, whichever, in the judgment of said Grand Lodge or its Committee on Homes, may be more needed or desirable. Said building shall be of the same general style and character and in

keeping with the buildings now erected or which may then be erected on said grounds, but before any work shall be done thereon, or the moneys be paid to said Grand Lodge therefor, the plans and specifications for said building shall be first submitted to and receive the approval of my said executors and trustees or their successors in office. When completed said building shall be known as The Harry T. Porter Memorial Home for Boys or Girls, as the case may be, and a suitable tablet so inscribed shall be placed thereon."

He directed in Item 11 (r) that the remainder be distributed "to such person or persons as would be entitled thereto under the laws of Pennsylvania, had I died intestate, unmarried and without issue."

Simultaneously with the audit of the account, a petition had been filed by the Grand Lodge requesting the court to modify the will of Harry T. Porter to provide for an award of $200,000 to the Trustees of the Consolidated Fund of the Grand Lodge to be invested as a separate fund to be known as The Harry T. Porter Memorial Fund, the income therefrom to be used for the benefit of boys and girls who reside at the Masonic Homes at Elizabethtown, Pennsylvania, and for such youth programs as may be conducted at the Masonic Homes. As stated earlier, the Attorney General of the Commonwealth joined in the prayer of the petition and the four remaining residuary beneficiaries supported the position taken by the Grand Lodge.

The learned auditing judge, after uncontradicted testimony, found that there existed homes at Elizabethtown for boys and girls, that erection of additional buildings was unnecessary and impractical given the size of the trust and the fact that the number of children residing and/or seeking admission had declined. With this finding the exceptant agreed.

The auditing judge then stated on page 6 of the adjudication "We have no difficulty in finding that the testator's intent as to the $200,000 fund was a charitable one and that this sum is now insufficient to carry out his specific intention." We whole-heartedly concur in this finding. Citing *Williams Est.*, 353 Pa. 638, the auditing judge applied the cy pres doctrine and then proceeded "to ascertain and carry out as nearly as may be the testator's true intention:" *Wilkey's Est.*, 337 Pa. 129, 132. The auditing judge properly concluded from the

testimony as well as a reading of the testator's will that the closest approximation of testator's intention would be to apply the income from the $200,000 fund to be used to benefit those children still in residence at the Homes and the youth programs that are being conducted there. With this conclusion we concur. However, the exceptant disagrees and contends that the auditing judge, in arriving at what the testator would have wanted, should have considered not only Item 11 (q) but also Item 15 of the will which provides:

"15. It is my intention and desire that I shall not die intestate as to any part of my estate, and if for any reason or cause, any of the legacies hereinbefore given shall fail, then such legacies shall revert to and become part of my residuary estate and shall go and be disposed of as hereinbefore directed and provided."

Exceptant argues that taken together they show that testator spelled out in Item 11 (q) specifically that he wanted a building in his honor with a suitable memorial tablet with certain specifications and plans of the building that had to be approved by his executors, suggesting the tight control the testator wished to have over how the Masons used the bequest, and that in Item 15 testator envisaged the possibility of a legacy failing and provided for a gift over to his residuary estate. The exceptant contends that reading the two clauses together makes it plain that testator provided for a gift over in the event the bequest *failed* and, therefore, cy pres has no relevance citing *Randall's Est.*, 341 Pa. 501. Exceptant concludes that testator's intent should be carried out and the $200,000 belongs in his residuary estate.

Contrary to exceptant's contention, we agree with the auditing judge's finding that there was no failure of the bequest but that it was simply impractical and since there was no failure of the legacy Item 15 of the will is inapplicable.

Exceptant further contends that other provisions of his will stated exactly what he wanted the charitable beneficiary to do and what he wanted to happen if the charity did not do it. Exceptant refers to the bequests in Item 11 (c), (d), (e), (f) and (g) of the will wherein testator provided for alternate gifts in the event that his primary gift was declined or refused. However, it is noted that in the gift to the Grand Lodge (Item 11 (q)) no alternate gift was stated. Testator's decision to not

provide for an alternate gift doubtless reflected his strong intent to benefit the Grand Lodge Homes at Elizabethtown and the children in its care regardless of the precise manner in which this could be accomplished. The will read as a whole, shows that testator's prime motive was a general charitable intention and not one of self aggrandizement.

Exceptant further contends that the cy pres doctrine was not applicable to this case because testator's will must be read in light of the law in the 1920's when testator wrote it and when he died.

Section 399 of the *Restatement (Second) of Trust* states generally the doctrine of cy pres:

> "If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will 'direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor."

This doctrine which is currently codified in 20 Pa. C.S.A. Sec. 6110 (1972), but which, as a reenactment of Section 10 of the Estates Act of 1947 (which is not retroactive), is not directly applicable to this case. Instead, five inconsistent and conflicting 19th century statutes* interpreted by a significant body of case law, control the question here.

A critical question regarding the nature of the charitable gift was addressed in those cases:

> "In order judicially to determine whether a charitable trust, which for some reason cannot be carried out in accordance with the prescribed plan of the testator, should be executed cy pres, it must be decided whether the testator's general intention was that his property should be applied to charity in any event, or only if such application can be made in the particular manner or form specified in his will."
>
> *Wilkey's Estate, supra.*

A similar contention was raised by the next of kin in *Dunlap Trust*, 29 FIDUC. REP., 573. There, the learned audit-

---

* Act of April 26, 1855, P.L. 328; Act of May 26, 1876, P.L. 211; Act of July 7, 1855, P.L. 259, Sect. 1; Act of May 9, 1889, P.L. 173, Sect. 1; and the Act of May 23, 1895, P.L. 114, Sect. 10.

ing judge, Klein, S.J., who also authored the present adjudication, dismissed the claim of the next of kin and discussed fully why cy pres was applicable citing *Williams Estate* (supra). We concur with the auditing judge's reasoning in *Dunlap* as well as here and find no merit to exceptant's contention.

Exceptant additionally argues that in *Randall's Estate* (supra) and *Pruner's Est.*, 400 Pa. 629 the court refused to apply the cy pres doctrine since the testators in those cases had a specific reverter to a non-charitable interest and, therefore, the decisions should apply here. In reading *Randall's Estate* and *Pruner's Estate,* both courts found, as a matter of fact, that the testators did not have a general charitable intent and, therefore, ruled out the cy pres doctrine and resorted to the specific reverter to a non-charitable interest. Neither case is a precedent to the instant case because here the auditing judge found the testator to have a general charitable intent and that the bequest to the charity did not fail. Furthermore, as noted earlier, testator's will in Item 15 was a general reverter to the residuary estate but found to be inapplicable.

> "Charities are favorites of the law and a gift, even for a specific charitable purpose, should be liberally construed whenever reasonably possible." *Pruner Estate* (supra, pg. 634)

As Klein, S.J. stated in *Dunlap Trust* (supra, pg. 576) :

> "The public policy in Pennsylvania has always been to apply the cy pres doctrine whenever possible and to limit very narrowly the right of next of kin to successfully claim the fund."

Accordingly, we concur in the auditing judge's conclusions that (1) the testator, Harry T. Porter, expressed a general charitable intent to build a suitable building on the Grand Lodge's grounds as a home for boys and girls; (2) the gift being charitable in intent must be preserved; (3) the cy pres doctrine must be applied; and (4) the exceptant has no standing to object to the application of cy pres.

For reasons set forth above and in the adjudication of the learned auditing judge, the exceptions are dismissed and an appropriate decree will be entered.

Exceptant requests that in accordance with Philadelphia Orphans' Court Rule 77.2 the entire trust fund, except the

$200,000 legacy in dispute, be distributed in accordance with a schedule of distribution to be filed by the accountant. We consent to such a request.