# Vaughn Estate

*Edward E. Knauss, III,* for petitioner.
*H. Rank Bickel, Jr.* and *H. Ober Hess,* for objector.
*John H. Bream,* for proposed cy-pres beneficiary.

SWOPE, P.J., June 10, 1974.—We have before us the petition of the trustee under the will of Patrick H. Vaughn, deceased, seeking an application of the cy-pres doctrine with regard to the remaining interest in the trust created out of the residue of decedent's estate. An answer has been filed on behalf of the sole remaining heir of decedent in opposition to the petition. The Attorney General of the Commonwealth, after notice, has indicated that he has no objection to the granting of the petition.

The questions to be determined would appear to be as follows:

1. Whether the gift itself is charitable in nature.

2. If so, whether testator, in making the gift, manifested a general charitable intent so as to permit an application of the cy-pres doctrine.

3. If so, whether the objective of the gift, as specified in the will, has been rendered impossible, impracticable or infeasible for any reason.

4. If so, whether the alternative disposition of the gift as requested in the petition is sufficiently consis-

tent with testator's charitable intention to provide an appropriate avenue for the application of the doctrine.

5. If so, whether the application of the doctrine is to be frustrated by the nonhappening of an event which respondent contends was a condition precedent to the operation of the gift in question.

6. If not, whether the application of the doctrine in the manner requested is nevertheless proscribed by constitutional limitation.

7. In any event, whether respondent has any standing to oppose the granting of the prayer of the petition.

From the entire record, including the notes of testimony of the hearing held and certain facts which have been stipulated, the following facts appear:

Patrick H. Vaughn died on November 24, 1920, leaving a will, dated January 11, 1915, and a codicil thereto, dated February 21, 1920, both of which were duly probated in Dauphin County on November 24, 1920, and upon which letters testamentary were granted to Central Trust Company (now National Central Bank) on November 29, 1920. In paragraph 6 of the will, testator gave all the rest, residue and remainder of his estate to his executor, in trust, nevertheless, for the uses and purposes thereinafter specified. Among the gifts provided in the will and codicil was one to the Bishop of the Harrisburg Diocese of the Roman Catholic Church amounting in the aggregate to $10,000, which sum was to be divided equally between the Sylvan Heights Home for Orphan Girls, Harrisburg, Pa., and the Paradise Protectory for Boys in Adams County, Pa. Provision was also made for the allowance by his trustee of the occupation, free of rent, of a row of ten houses owned by testator in the City of Harrisburg by families dependent for support upon deserving blind persons. The will further provided that in the event of a failure for any reason of the gift of free

rent, the property set apart for it should pass and vest in the "Patrick H. Vaughn Home for Aged and Infirm Women." Provision for this latter facility is contained in paragraph 10 of the will as follows:

"Upon the death of my wife and adopted daughter I direct that the residue of my estate not hereinbefore disposed of, together with any accretions thereto by accumulation of income or otherwise, and legacies which may have lapsed, shall be applied to the establishment and maintenance of a charity to be known as the 'Patrick H. Vaughn Home for Aged and Infirm Women.'"

Said paragraph 10 of the will provided further that the home should be managed and controlled by a corporation to be formed and to which the property comprising the gift should be transferred, that the incorporators and members of the corporation should be five in number, among which one was to be selected by the executor, one was to be selected by the Orphans' Court of Dauphin County and one was to be the Bishop of the Roman Catholic Diocese in which the City of Harrisburg might then be, or one of his selection, should he be unwilling to serve. The home was to be located within, or in the immediate neighborhood of, the City of Harrisburg. No person was to be admitted or rejected for admission based upon her religious belief. No admission fee was to be charged, but each inmate would be required upon admission to assign and convey her entire estate to the corporation. No member of the corporation was to receive compensation for his services and the first superintendence of the home was to be under testator's niece, a Roman Catholic nun, known as Sister Calista, and who was experienced in the care of the aged. Testator's adopted daughter, Margaret Marie Vaughn (by marriage Geiger), she being the last person with a life

interest in this estate, died on August 25, 1965. Her only child, Joseph V. Geiger, respondent herein, is now the sole heir at law of his grandfather, Patrick H. Vaughn, whose estate is here in question. The parties have agreed that as of November 12, 1972, the assets making up the remainder of the trust, following the extinguishment or expiration of all life estates, had a market value of $426,962.96. It is this sum, therefore, which must serve for the implementation of that portion of the will relative to the creation of the Patrick H. Vaughn Home for Aged and Infirm Women, and, of necessity, for its maintenance and the support of its continuing operation. The provision in paragraph 9 of the will for rent-free occupation of certain of decedent's houses by families of blind persons has been terminated and the value of the assets involved therein are now a part of the remainder with which we are presently concerned. The surviving spouse of Patrick H. Vaughn duly elected to take against his will and designated as a part of her elective share the property which testator had directed for use as the first quarters in which the Home for Women should be housed, which property, therefore, is no longer a part of the estate. The present-day cost of construction for a small residential home for the aged accommodating perhaps 15 to 20 persons would be at least $15,000 per bed. In order to provide an endowment fund for such an establishment any sort of prudent protection against inflation in the general economy, it is necessary to afford it a measure of growth potential in its investment. Investments meeting this requirement cannot be expected to yield income at a rate greater than four to five percent of the amount invested on an annual basis. In recent years, the operation of small residential homes for the aged accommodating 10 to 20 persons have proven uneconomical and impracticable

and many such homes have found themselves in straitened circumstances financially and have been closed, or forced to close, as a matter of economic necessity.

Villa Teresa, duly formed in this Commonwealth as a nonprofit corporation, presently operates as owner an extended care and nursing home facility in Lower Paxton Township, Dauphin County, Pa., adjacent to the City of Harrisburg, opened in 1973, having 178 beds, constructed at a cost in excess of $5,000,000. The purposes of Villa Teresa as set forth in its articles of incorporation are as follows:

"To own and operate a geriatric hospital and extended care facility and home for the aging and as such to provide facilities for the aging sick, infirm and convalescent by properly qualified physicians, surgeons, nursing and other professional personnel; to administer all forms of charity, to carry on social service work, to operate clinics and to do any and all acts that are necessary and incident to the operation of a geriatric hospital and nursing home without regard to race, color, creed or national origin."

Villa Teresa will provide care for all persons regardless of race, color, national origin or religious creed; will admit patients 18 years of age and over, but primarily persons 65 years of age and over, except persons suffering from serious mental disorders, communicable diseases or alcoholism. Villa Teresa will charge each person on a cost-of-operation-per-patient-per-day, including depreciation of building and equipment based on a 15-year period. Villa Teresa will keep its patients as long as he or she needs care regardless of funds available to the patient for payment to Villa Teresa. Villa Teresa is being operated by a board of directors consisting of members of the Order of Carmelite Sisters, and also representatives of the

Roman Catholic Diocese of Harrisburg and laymen. The Order of Carmelite Sisters will provide the staff for the administration and operation of the home. Villa Teresa will provide general nursing care, dietary, housekeeping, physical medicine, dentistry, podiatry, and recreational services including social case work and chaplaincy and will provide counselors, social workers, dietitians, registered and practical nurses, geriatric aides, orderlies, housekeeping aides and security personnel around the clock. It will have a ratio of about one employe to each patient. One of the wings on the medical floor of Villa Teresa to be operated in Lower Paxton Township, Dauphin County, Pa., will be designated as the "Patrick H. Vaughn Pavilion." The Villa Teresa has a policy of admitting a certain number of indigent people who cannot afford to pay for their daily care. Villa Teresa provides chapel facilities for religious services of all denominations.

Finally, decedent, Patrick H. Vaughn, was a member of the Roman Catholic faith.

Turning our attention now to the issues posed, we have not the slightest doubt that the gift in question was charitable in nature and that it manifested a general charitable intent on the part of testator. The definition of the term "charity" in the legal sense may be expressed generally as follows:

"A charity in a legal sense may be more fully defined as a gift to be applied consistently with existing laws for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government": Taylor v. Hoag, 273 Pa. 194, 197 (1922).

We cannot conceive of any gift which more squarely falls within the ambit of the definition than one for the establishment of a home for aged and infirm women. Smith's Estate, 181 Pa. 109 (1897). Respondent advances a series of contentions in an effort to refute the charitable nature of the gift. None of them has merit. He suggests that since the will provides that all patients admitted are to be required to assign and convey all of their assets to the home, there is a possibility that the institution could find itself self-supporting, and that since all of the guests could be capable of financial independence, the burdens of government would not be lessened. Aside from the fact that this contention is wholly conjectural, it is also unsupported by authority of any sort. It would appear to result from an erroneous reading of the definition of "charity" as set forth in Taylor v. Hoag, supra, which would make the "otherwise lessening the burdens of government" an indispensable feature of the application of a gift before it could be considered charitable in nature. With this, we cannot agree. If the definition is considered in its entirety, it is evident that charitable gifts are divided into two broad categories. First, those for the relief of the burdens of persons and, second, those for the relief of the burdens of government. The definition carefully joins the two categories by the use of the disjunctives "either"-"or," and we are satsified that a gift will be charitable in nature if it falls into either category. The gift with which we are presently concerned, having as its purpose the providing of a home for aged and infirm women, falls squarely into the first category and is, therefore, charitable in nature. To insist, as the respondent does, that the language "or otherwise lessening the burdens of government" applies to both categories which precede it in the definition rather than only to the immediately precedent category not only flies in the face of proper grammatical construc-

tion, but would also render the reference in the first category to bringing the minds or hearts of persons under the influence of religion nugatory, since any such result could not conceivably lessen the burdens of government, this not being a proper function of government in any case. Therefore, under the respondent's interpretation, the definition would make gifts for religious purposes charitable in nature and at the same time, and by its own terms, would also impose a requirement which would prevent a gift for religious purposes from qualifying as a charity. We choose not to accept any such construction.

Respondent further contends that since testator provided for the use of his own name for the institution, the exclusion of non-white persons, and the appointment of his niece as first superintendent, his intent was not "altruistic." No case is cited which establishes altruism as an indispensable ingredient of a charitable gift, and we do not agree that any such requirement exists. Historically, the memorial aspect of charitable gifts is deeply ingrained and universally recognized in our society. The restriction based on racial considerations, while not supportable in light of current constitutional application, nevertheless, at the time the will was written, was both supportable and enforceable. Nor are we aware of any case, even in the present state of the law, wherein the existence of such a restriction worked to destroy the gift, the courts being satisfied, instead, simply to strike down the restriction. We note that, in any event, the application of the fund as sought in the petition would free the gift in this regard, since it is the policy of Villa Teresa, dictated by the very terms of its charter, to offer its facilities without regard to the race, color, creed or national origin of its patients. Turning to Sister Calista, we are hard pressed to agree, as sug-

gested by respondent, that the gift in question was in reality nothing more than a subterfuge whereby testator sought to provide a haven for this close relative, particularly in view of the fact that as a Roman Catholic nun she had already found a haven wherein the matters of her regular employment and general welfare, both in this world and the next, could scarcely have been enhanced by the secular gifts of her earthly kin. Being himself Roman Catholic, we are certain that testator's understanding in this regard was at least as perceptive as ours. It would seem more reasonable to believe that knowing of his niece's experience with the care of the aged, testator, in designating her as the home's first superintendent, sought merely to bolster the better operation of the home.

In addition to finding that the gift in question was itself a charitable gift, however, before applying cy-pres it must also be found that testator had a general charitable intent. From the will itself, and its codicil, which we may consider in its entirety in making this determination, we are satisfied that the necessary intent may be found. While not in and of itself controlling on the question as to whether or not testator had a general charitable intent in making the gift in question, we are aided in determining the question by the fact that the will and codicil contained other gifts of a charitable nature, designated for the benefit of orphaned children and for the relief of families of blind persons. This, taken with the fact that, except for pecuniary bequests to a nephew and possible grandchildren and life interests to his wife and daughter and possible grandchildren until age 21, the entire estate was given to charity, certainly establishes Patrick H. Vaughn as a man of a most generously charitable nature, of whom in the absence of evidence to the contrary we might expect gifts of general, rather

than specific, charitable intention. We find no evidence to the contrary in his will and codicil nor in our entire record. While he provided in great detail the manner in which the gift for the home for aged and infirm women should be rendered operable, he in no way specified any of these administrative directions as conditions to be attached to his gift, nor did he make any provision with regard to alternative disposition of this gift, although he did, in fact, make such provision with regard to the earlier gift in the will for the benefit of families of blind persons, thus demonstrating that he was fully capable of foreseeing such a need and of providing for it. Additionally, while conceding that testator's own designation of the home for aged and infirm women in his will as a "charity" would not, in and of itself, control the determination as to whether or not it was in fact a charity, it nevertheless may be taken as a significant indication of his intention in this regard. Moreover, charities have always been favored in the law: Funk's Estate, 353 Pa. 321 and Little's Estate, 403 Pa. 247. The language in a will which provides for a charitable gift should be construed liberally not only in order to permit the finding of a general charitable intent but also to permit the court to take the steps necessary for the carrying out of testator's true intention as nearly as possible. We are satisfied that the respondent has not met his burden in proving the lack of general charitable intent on the part of testator in making the gift in question.

From the facts in the instant case, it would appear that the creation and support of a home for aged and infirm women such as envisaged by testator at the time of making his will in 1915, and even at the date of his death in 1920, has become an increasingly costly undertaking. In the better than a half century which has passed between the time this will was written and

the present, this Nation has developed in an ever-expanding economy, accompanied, nevertheless, by a considerable reduction in the buying power of the dollar, resulting, inter alia, from increased costs both of commodities and services. The dollars which are presently available for the carrying out of Patrick H. Vaughn's intention, while more numerous than when his will became operative, unfortunately are of much lesser value, a circumstance the development of which he either did not foresee or, if he did, then for which he failed to make sufficient allowance. To this fact must be added the realization that homes for the aged and infirm, even those of a basically residential type, have been subjected to continually increasing costs in order to meet the requirements at every level of government which are imposed upon them for the safety and general welfare of their patients. In order to carry out the provisions in the will in this regard in as nearly literal a fashion as possible, since the building in which he directed that the home should first be housed is not available by virtue of his widow's election, it would be necessary to construct a building. The cost of such a structure, designed and constructed for the required purpose, would be at least $15,000 per bed, for a home to accommodate approximately 15 to 20 persons. We think it reasonable to anticipate that the construction cost per bed would doubtless be increased as the total number of beds would be decreased. Minimum cost of construction then for a 15-bed home would project to approximately $225,000. Out of the available sum of $426,962.96, this would leave a fund to support and maintain the home and its operation of approximately $200,000, which, prudently invested, might produce income of approximately $8,000 to $10,000 per annum. It is simply not feasible to attempt to provide staff, building care and

maintenance, heat, utilities, food and basic necessities in a home for 15 aged persons on so limited an income. While there would be the possibility that some patients would have property to be transferred to the home upon their admission, this is entirely conjectural and we may not safely anticipate that the operation of the home might thereby be rendered financially sound.

Under circumstances such as those presented in the instant case, we find the language of the court in Wilkey's Estate, 337 Pa. 129, beginning at page 132, particularly applicable:

"In order judicially to determine whether a charitable trust, which for some reason cannot be carried out in accordance with the prescribed plan of the testator, should be executed cy-pres, it must be decided whether the testator's general intention was that his property should be applied to charity in any event, or only if such application can be made in the particular manner or form specified in his will. In applying the principle of cy-pres the court does not arbitrarily substitute its own judgment for the desire of the testator, or supply a fictional testamentary intent, but, on the contrary, it seeks to ascertain and carry out as nearly as may be the testator's true intention; in so doing it assumes that where a particular purpose is apparently not an essential feature of his plan, the testator would prefer that his property should be applied to a purpose as similar as possible to that stated by him rather than that the trust which he attempted to create should fail altogether. Perhaps the best enunciation of the doctrine is that contained in Restatement, Trusts, section 399: 'If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settler manifested a more general intention to devote the property to charitable

purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settler.' Or, as tersely stated in City of Philadelphia v. Heirs of Stephen Girard, 45 Pa. 9, 27, 28: 'The rule of equity on this subject seems to be clear, that when a definite charity is created, the failure of the particular mode in which it is to be effectuated does not destroy the charity, for equity will substitute another mode, so that the *substantial* intention shall not depend on the insufficiency of the formal intention.' "

Villa Teresa offers an alternative to the facility envisaged by testator whereby his gift may be applied in a manner most nearly approximating his true intent. It is a nonprofit organization which is clearly charitable in nature. It is located in Dauphin County, in a neighboring township to the City of Harrisburg. It provides care for aged and infirm women. While closely allied to the Catholic Church in its organization and direction, it is nonsectarian in its operation, makes no requirement of religion in its admission policy and allows complete freedom of religious adherence and practice to its guests. While it makes charges for its services in cases where there is an ability to pay on the part of its patients, it also admits indigents without charge. It will memorialize the name of testator by designating a wing of its facility as the "Patrick H. Vaughn Pavilion." We are satisfied that the intention of decedent with regard to the creation and operation of a home for aged and infirm women will be so nearly approximated by the Villa Teresa's application of his gift in the operation of their own facility that the gift may properly be awarded cy-pres by the court in accordance with the prayer of the petition.

Respondent contends that the instructions of testator in his will as to the creation of a corporation for the operation of the Patrick H. Vaughn Home for Aged and Infirm Women constituted a condition precedent to the gift and cites cases, principally Wanamaker's Estate, 312 Pa. 362 (1933), in support of the contention that the cy-pres doctrine may not be applied to a gift which is not completed as a result of an unperformed condition precedent. The Wanamaker case is distinguishable from the case presently before us. In Wanamaker, the will provided:

"In the event of Princeton University, Princeton, New Jersey, establishing a permanent course for Mercantile Business Instruction, I order and direct the annual payment of . . . ."

Princeton University, at the time it petitioned for cy-pres application, did not offer such a course nor did it indicate any intention to establish one. The court, in refusing the petition, did not conclude, as we do here, that the purpose of the gift had been rendered impossible, impracticable or infeasible for any reason. The court there, in fact, concluded that the decedent, Wanamaker, had provided a conditional rather than a general gift which was not completed, and could not be, except upon compliance with the strict requirements of his will, which compliance had never been forthcoming. In the case before us, we have already concluded that our decedent manifested a general charitable intention in his will, and we are satisfied that, even though he included quite detailed instructions as to the formation of a corporation to which his gift was to be conveyed or otherwise transferred for the creation and operation of the home, there is no evidence either in his will or in this record to indicate that he intended that unless the corporation was formed, and formed exactly as he had instructed, the

gift would fail. The decedent, Wanamaker, was concerned with the creation of a certain, specially designed course of instruction which his gift would then support. When no such course materialized, the court refused to apply cy-pres, since they were satisfied that nothing less than the exact course specified in the Wanamaker will would satisfy the condition which had been imposed before the gift would become operative. In the instant case, Patrick H. Vaughn provided a gift, not for the creation of a corporation, but rather for the establishment of a home for aged and infirm women. The gift was charitable, born of a general charitable intent. Its purpose may be accomplished whether a corporation is formed or not. The application of the cy-pres doctrine will approximate that intention. We do not agree that the instructions in his will as to the formation of a corporation to carry out the purposes of the gift were intended to create a condition precedent to the completion of the gift.

Respondent finally contends that a transfer of the assets in question by an order of this court would be violative of the "establishment" clause of the First Amendment of the Constitution of the United States as applicable to State court action through the Fourteenth Amendment and which provides that "Congress shall make no law respecting an establishment of religion." He also contends that such action would be violative as well of article III, sec. 29, of the Pennsylvania Constitution which provides that "No appropriation shall be made for charitable, educational or benevolent purposes . . . to any denominational and sectarian institution, corporation, or association." In support of this contention, insofar as it concerns the First Amendment proscription, the case of Shelly v. Kraemer, 334 U.S. 1 (1947), is advanced. To the extent that that case holds that the "establishment" clause

of the Federal Constitution also works to restrict the States and that the actions of State courts in enforcing private agreements or actions constitutes State action, we must agree. Likewise, in reviewing the opinion of the Pennsylvania Supreme Court in Collins v. Kephart, 271 Pa. 428 (1921), cited in support of the contention with respect to the prohibitions against appropriations for the benefit of sectarian institutions as contained in the Constitution of this Commonwealth, we also must agree. We fail to see, however, how either of these cases can apply to the case at bar so as to prevent an application cy-pres of the gift in question to Villa Teresa. With respect to the "establishment" clause of the First Amendment, in the absence of clear authority to the contrary, we take the view that even though Villa Teresa, in light of the tests relied upon by the court in Collins v. Kephart, supra, particularly in the situation presented by the DuBois Hospital Association, would needs be found sectarian in its organization and direction, since the actual operation of the nursing care facility in support of which the gift would be applied is clearly nonsectarian, and in no way concerned with the propagation of any faith, not only as prescribed in the charter purpose of Villa Teresa, but also in actual practice, an application of the cy-pres doctrine to benefit the nursing home facility would be void of religious significance and, therefore, not subject to the constitutional prohibition. For a similar view, see Rhoads v. School District of Abington Township, 424 Pa. 202 (1967). With respect to the restriction contained in article III, sec. 29, of the Pennsylvania Constitution, we must point out that in Collins v. Kephart, supra, being the only case relied upon by respondent in this regard, the court was called upon to determine the constitutionality of legislatively enacted State aid to the institutions involved. Having

first found those institutions to be sectarian in nature, the court then held the appropriations for their benefit to be prohibited by article III, sec. 29, of the Pennsylvania Constitution. Respondent goes on from that holding to insist that court action in applying a charitable gift cy-pres also constitutes an "appropriation" such as contemplated in the language of article III, sec. 29, of the Pennsylvania Constitution which, in the present circumstances would likewise be unconstitutional. Again, in the absence of clear authority to that effect, and none has been cited to us, we cannot agree that such an extension of the holding in Collins v. Kephart is either warranted or supportable. We are faced, in the instant case, not with an appropriation of public funds by legislative action, but rather with the charitable gift of a private individual. We fail to see how one can be equated with the other. To hold otherwise in our opinion, would result in the imposition of such restrictions on the application of the cy-pres doctrine, in this as well as future cases, as to effectively destroy it as a useful tool of the courts for the preservation of charitable gifts. This, we are unwilling to do in the absence of clear authority.

Finally, although we deem it unnecessary to conclude the point in light of what has already been determined herein, we nevertheless have serious doubts as to the standing, in any event, of the respondent as heir or next of kin of this testator to object to a cy-pres execution of the charitable gift in question. These doubts are based upon what we consider to be the most serious indications of our Supreme Court in this direction, to be found in Wilkey's Estate, supra, pages 134-35, and again in the reference thereto in Williams Estate, 353 Pa. 638, at page 642.

Accordingly, in light of all of the foregoing, we make the following

## FINAL ORDER

And now, June 10, 1974, the prayer of the petition of National Central Bank, trustee under the will of Patrick H. Vaughn, deceased, for administration of charitable bequest under the cy-pres principle is hereby granted, and the objections thereto filed on behalf of Joseph Vaughn Geiger are hereby overruled and dismissed. The trustee is hereby directed to turn over all of the assets in its hands attributable to the charitable gift in question, subject to accounting, to Villa Teresa, a Pennsylvania nonprofit corporation, to be applied by said corporation in a manner most nearly approximating the uses and purposes therefor as set forth in the last will and testament of said decedent.